## Nisbet v. Lofton.

(Decided November 27, 1925.)

## Appeal from Webster Circuit Court.

1. Mines and Minerals—Whether Defendant's Lessees, in Mining Coal, Removed Pillars from Beneath Plaintiff's Property, and Defendant Received Notice Thereof, Held for Jury.—In action for damages for removal of support from plaintiff's lot by mining coal thereunder, whether defendant's lessees removed pillars from beneath plaintiff's property, and whether plaintiff notified defendant that they were doing so, held for jury.

2. Mines and Minerals—Tenant in Common in Coal Ownership Held Liable for Subsidence of Surface in Action Against Him Alone.— Tenants in common in property are not all necessary parties to action for damages from acts of malfeasance injuring adjoining property, and heir of one of two owners of coal under land, who as agent for other heirs and co-tenants, knowingly permitted persons engaged in mining to remove supporting pillars, held liable for subsidence of surface in action against him alone.

3. Mines and Minerals—Owner of Mining Rights Liable for Removal of Pillars Supporting Surface, though Done by Other Persons.— That coal pillars supporting surface were not removed by owner of mining rights, but by other persons, did not relieve owner who received royalty on coal so removed of liability for subsidence of surface, where such persons had no lease, and could have been stopped at any time; surface owner having made complaint.

4. Torts—Party May Not do Wrong by Indirection.—A party may not do by indirection that which he is by law directly prohibited from doing.

5.   Torts—One Knowingly Reaping Benefit of Wrong is Liable.—One
     knowingly reaping benefit of a wrong must assume liability result-
     ing therefrom.

6.   Landlord and Tenant—Landlord Liable for Injury to Third Person
     Caused by Tenant's Act Knowingly Permitted, which should Have
     Been Prohibited.—Landlord who authorizes or knowingly permits
     an act on part of his tenant which it is his duty to prohibit, whereby
     a third person is injured, is responsible for such injury, if tenant
     would be liable.

7.   Mines and Minerals—Measure of Damages for Subsidence of Sur-
     face Caused by Mining Operations Stated.—Measure of damages for
     subsidence of surface from removal of coal support is difference be-
     tween reasonable market value immediately before and immedi-
     ately after injury.

8.   Damages—Measure of Damages for Permanent Injury to Realty
     Stated.—Where injury to realty is permanent, measure of damages
     is depreciation in its market value resulting therefrom.

9.   Mines and Minerals—Evidence Showing Difference Between Market
     Value of Surface Immediately Before and After Subsidence Caused
     by Removal of Subjacent Support Admissible.—In action for dam-
     ages for subsidence of surface, resulting from removal of sub-
     jacent coal support, evidence showing difference between market
     value of surface of property immediately before and after injury
     held admissible.

GORDON & GORDON & MOORE for appellant.

J. C. CANNADY and RAYBURN & WITHERS for appellee.

Opinion of the Court by Drury, Commissioner—
Affirming.

The appellee was plaintiff below and we will refer to
him as plaintiff, while appellant will be called defendant
because he occupied that position in the trial court, and
has appealed here, asking a reversal of a judgment for
$900.00 recovered against him by plaintiff. The facts
leading up to this litigation are these: On March 29, 1899,
J. W. Givens and wife, Henry Givens, and the executors
of T. K. Givens, by deed of record in Webster county
deed book 33 at page 202, conveyed to F. D. Ramsey and
W. A. Nisbett, the coal underlying 330 acres of land
near Providence, Kentucky. A part of the coal had even
then been mined under a lease, and a larger part of it
has since been mined. This deed contained the follow-
ing:

"'It is understood that the said J. W. Givens and
T. K. Givens have sold the surface to the 330 acres
of land herein described to said Ross Givens since

the original lease was made and since the death of T. K. Givens, and he unites with J. W. Givens and the executors aforesaid in this deed to perfect the right and title to the property and privileges herein conveyed.''

On March 10, 1924, plaintiff began this action against W. J. Nisbett, one of the heirs of W. A. Nisbett, alleging in his petition that W. J. Nisbett was the agent and party in charge of said property, that the plaintiff was the owner of a house and lot near Providence, which was underlaid with a seam of coal belonging to the heirs of W. A. Nisbett and F. D. Ramsey, and that the defendant had suffered and permitted parties to enter under the plaintiff's property and to remove the coal therefrom without leaving sufficient support, as a result of which plaintiff's property was caused to and did cave in, and his property was damaged in the sum of $2,000.00. The defendant answered denying everything in the plaintiff's petition except that the plaintiff was the owner of the house and lot. Upon the trial of the case the defendant insisted that by the deed *supra* it acquired ''the whole and every part of the coal mining privileges and rights to mine the coal from, in and under, including all the coal in and to a tract of land lying near the city of Providence, Webster county, Kentucky.'' Defendant insisted that the phrase, ''including all the coal,'' gave it the right to remove all the coal without responsibility for any subsidence of the surface that might result therefrom, and contended that it was for the express purpose of granting it that right that the surface owner, Ross Givens, joined in the deed. It is not necessary for us to determine whether or not this expression gave to the grantees in that deed the right to remove all the coal without responsibility for subsidence of the surface, for the reason that it is not shown in this record that the surface premises now owned by the plaintiff were then owned by Ross Givens, and consequently, there is nothing to show that the defendant had any right to remove all the coal from beneath the plaintiff's property, without responsibility for resulting subsidence. It appears from the answer of defendant that at the time of the execution of this deed, the coal had even then been removed from the premises owned by the plaintiff, but that in its removal, sufficient pillars had been left to support the surface. Plaintiff testified that the defendant had told him on different oc-

casions that he owned the coal beneath the plaintiff's. property.

It appears from the evidence that about the year 1919, a man by the name of Sherman Curry, who owned the surface of a tract of land not far from the plaintiff's. property, made an opening to this coal, and without let or leave of any one, began to mine coal by removing pillars that had been left by former mining operations. Defendant heard of it, and went to see about it, but was unable to find Curry. He then wrote him a letter to stop, but heard nothing more about the matter until some months afterwards, when he learned that the mine was being operated by Hill, Meidreicht & Brown. These men gave defendant a check and explained to him that there was a little block of unmined coal there, which. Curry had opened and they were mining, and that this check was for royalty. They ran the mine for a while, then sold it to James Young, who ran it for a while. In some way, T. H. Heady became connected with the mine. All of these paid royalty to defendant for mining coal. There was testimony that during this time the pillars which had been left previous to 1899 to support plaintiff's surface and which were 18 by 50 feet in size, something like 18 feet apart, were almost entirely removed, that they were reduced to small blocks about four by six feet in size, and that these blocks were insufficient to support the surface, as a result of which it sank, the foundation of plaintiff's house sank, and it careened, the paper on the wall cracked, the doors would not open and close properly, a shade tree which had stood erect previous to that time was caused to lean over, and the plaintiff's. chimney settled.

Plaintiff testified that when Hill, Meidreicht & Brown began removing the pillars beneath his property in the latter part of 1919 or first part of 1920, he went to defendant and told him they were removing the pillars. from under his property and that he went to defendant on a number of other occasions about this matter. Defendant denies that plaintiff came to see him about this, and Hill, Meidreicht & Brown deny that they mined any coal under the plaintiff's property or removed any pillars. No survey was made to determine whether or not. the pillars beneath plaintiff's property had been removed. It is a difficult matter for a man in a coal mine to know exactly beneath just what surface property he is working without a survey. Several witnesses were introduced for

the plaintiff who testified that they worked in this mine at this time, and that they did remove pillars from beneath plaintiff's property. They gave a very reasonable explanation of just how they knew where they were working. Whether they did remove pillars from beneath plaintiff's property or not, and whether plaintiff notified defendant that they were doing so or not, were questions for the jury and were submitted by proper instructions.

Defendant was one of the heirs of W. A. Nisbet. This coal belonged to the heirs of W. A. Nisbet and F. D. Ramsey, and the court by proper instruction, told the jury that if the defendant, as one of the heirs of W. A. Nisbet, deceased, and as agent of the other heirs of W. A. Nisbet and F. D. Ramsey, deceased, knowingly permitted any person or persons to remove these pillars, the defendant was responsible. Defendant complains of that instruction. In the case of Low v. Mumford, 14 Johns, 426, 7 Am. Dec. 469, the Supreme Court of New York drew a distinction between acts of nonfeasance and acts of malfeasance. It held that tenants in common were all necessary parties in actions based upon nonfeasance or the omission to do something which as tenants in common of one property, it was their duty to do, for the benefit of the owner of neighboring or adjoining property, but also held that if one or more tenants in common of one property, by some act of malfeasance, that is, by some wrongful act, done with regard to the property they held in common, injured the property of another, that the owner of the injured property had a right of action against any or all of these tenants in common. In that case the defendant owned jointly with several others a tract of land whereon he erected a mill dam, thereby impounding the waters of a stream, and overflowing the land of an upper proprietor. This proprietor sued the party who had erected the dam. This defendant filed a plea in abatement because his co-tenants were not made parties. A demurrer to the plea in abatement was overruled, and the plaintiff's action was dismissed. This judgment was reversed, and the court held that plaintiff was not bound to join the co-tenants, but that he might sue any or all of those who had done the tortious act. We have found other authorities to this effect.

"While it is the rule ordinarily that tenants in common should all be made defendants in an action for negligence respecting the premises owned

by them, yet it is not necessary nor even proper to do so where the negligence complained of is the act of one in possession or control of the common property." Baker v. Fritts, 143 Ill. App. 465.

"By the common law 'if several persons jointly commit a tort the plaintiff, in general, has his election to sue all or some of the parties jointly, or one of them separately, because a tort is in its nature a separate act of each individual.' (1 Ch. Pl. 86.) This rule has not been changed by the Code." Buckles, et al. v. Lambert, 61 Ky. (4 Metcalfe) 330.

In the case of Corsicana National Bank v. Johnson, 251 U. S. 68, 40 Sup. Ct. 82, 64 L. Ed. 141, the Supreme Court of the United States said: "The violation is in the nature of a tort, and the party injured may sue one or several of the joint participants. Bigelow v. Old Dominion Copper Co., 225 U. S. 111, 132, 32 Sup. Ct. 641, 56 L. Ed. 1009, Ann. Cas. 1913E, 875."

The court by proper instruction told the jury that it was the duty of the heirs and successors of F. D. Ramsey and W. A. Nisbet, in mining and removing the coal, to leave in place such an amount of coal and so located as to support the plaintiff's surface, and that if the defendant, as one of the heirs of W. A. Nisbet and as agent of the other heirs of W.A .Nisbet and F. D. Ramsey, knowingly permitted these pillars to be removed in whole or in part, and that as a direct result, the surface of plaintiff's land was caused to subside, they should find for the plaintiff. This instruction was proper. The jury found for the plaintiff, and its verdict is supported by the evidence.

Defendant insists that he should not be held responsible for the removal of these pillars since he did not remove them, and that they were removed by other parties. He knew that by previous operations, the main body of the coal beneath plaintiff's property had been removed, and nothing was left but the pillars necessary to support the surface, and he stood by and received the royalty which was paid him by certain parties whom he knew were mining in the neighborhood of the plaintiff's property, and who, the plaintiff says he told defendant, were removing the pillars from beneath plaintiff's home. Under such circumstances, it manifestly would not be proper to allow defendant now to say he had no control over this matter, for since these parties had no lease, he could have stopped them at any time, and after plaintiff

told him they were removing these pillars, it was his duty to stop them. He did not do it, and as he did not, he must suffer the consequences. This theory of the law is borne out by the case of Kistler v. Thompson, 158 Pa. 139, 27 Atl. 874.

Defendant, according to the finding of the jury, knew that this coal was being removed, and the superincumbent soil left without adequate support. He knowingly reaped the benefit of this wrong by accepting royalty upon coal which he knew should be and had been left as support for the surface. The act of his lessees in removing these supports was a wrongful act which the defendant sanctioned or consented to, at least, he took no steps to prevent it, and of which he has received the benefit, and hence his liability is the same as though he had committed the wrongful acts which resulted in the damage to the plaintiff's property. The defendant himself, in this case, could not rightfully remove the pillars beneath plaintiff's property, without leaving support sufficient to prevent injury to the plaintiff's surface, hence could not vest in his lessees any greater rights than he had. A party may not do by indirection, that which he is by law drecitly prohibited from doing. One cannot knowingly reap the benefit of a wrong and escape the liability resulting from that wrong. See Harris v. Ryding, 5 Mess & W. 60; Mickle v. Douglas, 75 Ia. 78, 39 N. W. 198; Coleman v. Chadwick, 80 Pa. 81, 21 Am. Rep. 93; Campbell v. Louisville Coal Mining Co., 89 Pac. 767, 10 L. R. A. (N. S.) 822, 39 Colo. 379.

A landlord who authorizes or knowingly permits an act on the part of his tenant which it was his duty to prohibit, whereby a third person is injured, is responsible for such injury, if the tenant would be liable. Riley v. Simpson, 83 Calif. 217, 7 L. R. A. 622; 23 Pac. 293; Campbell v. Louisville Coal Mining Co., *supra.*

Defendant cites the cases of Adams & Sullivan v. Sengel, 177 Ky. 535, 197 S. W. 974, 7 A. L. R. 268; L. & E. Ry. Co. v. Baker, 156 Ky. 431, 161 S. W. 228; Southern Ry. Co. v. A. M. E. Church, 121 S. W. 972, and says that the trial court erred in instructing the jury upon the measure of damages. The instruction is:

"If you find for plaintiff under instruction No. 3, you will award him such sum in damages as you may believe from the evidence equals the difference between the reasonable market value of said property immediately before said damages arose and its

reasonable market value immediately thereafter, not to exceed, however, the sum of $2,000.00, the amount claimed in the petition.''

Defendant's contention is that the injury to plaintiff's property was merely temporary; that he could build a new foundation beneath his house and by having a carpenter work on his doors and windows they could be made to open and close, and that thus the plaintiff's property could, without any great expense, be restored; but that is because he loses sight of the real damage, which was to the plaintiff's lot. The real damage to plaintiff's property was the removal of these pillars beneath it in such a quantity that it became insecure and subsided. These things that happened to the house were only the results of the real damage. Not a witness suggests that it would be possible to restore the coal or put some other material in its place beneath plaintiff's property so as to prevent further subsidence. The removal of these pillars and the resulting instability of the plaintiff's lot is just about as permanent a damage as can be imagined.

This court has adopted a rule in injuries to real estate. It is: ''Where injury to realty is permanent, the measure of damage is the depreciation in its market value resulting therefrom.'' Toebbe v. City of Covington, 145 Ky. 763, 141 S. W. 421; King v. Board of Council City of Danville, 128 Ky. 321, 32 R. 1188, 107 S. W. 1189; Fidelity Trust Co. v. Shelbyville Water & Light Co., 110 S. W. 239, 33 R. 202.

None of these cases deals with injury to real estate occasioned by subsidences that resulted from the re-removal of subjacent support, but they do deal with analogous questions and we find that this rule has been adopted in other states as the measure of damage for injury resulting from removal of subjacent support. See Rabe v. Schoenberger Coal Co., 213 Pa. 252, 62 Atl. 854, 3 L. R. A. (N. S.) 782, 5 Ann. Cas. 216; Jackson Hill C. & C. v. Bales, et al., 183 Ind. 276, 108 N. E. 962; Ohio Collieries Co. v. Cocke, 107 Ohio St. 238, 140 N. E. 356; Hoffman v. Berwind White Coal Mining Co., 265 Pa. 476, 109 Atl. 234.

His final complaint is directed to an alleged error in the admission of evidence, but this is because of his contention that the injury to the plaintiff's property was easily repairable, and he makes his contention because of that. We cannot agree with him. When these pillars

were removed, and the plaintiff's property began to settle and crack, there is nothing within the bounds of reason that can be done to the property of plaintiff to make it as valuable as it was before. Therefore, plaintiff was properly permitted to introduce evidence showing the difference between the market value of this property immediately before and immediately after the injury. It follows that the judgment is correct, and it must be affirmed.

Judgment affirmed.