## Phoenix Amusement Co. v. Padgett's Adm'x.

Jan. 15, 1946.

Stoll, Muir, Townsend, Park & Mohney for appellant.

I. Jay Miller, William B. Gess, and Scott Reed for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER—
Reversing.

The action was instituted by appellee to recover damages of appellant for the death of Erma Artie Padgett. Miss Padgett died of an abscess of the brain, allegedly resulting from an injury sustained by her when she tripped on a defective carpet in the Ben Ali Theater, operated by appellant in Lexington. Judgment was entered upon a verdict of the jury in favor of appellee in the sum of Two Thousand Dollars ($2,000). The sole question for our determination is whether the evidence was sufficient to submit the case to the jury.

Appellee introduced but one witness, Nellie Marie Fletcher, who claimed to have been present and to have seen the accident. She testified that the deceased and she were descending the second of three flights of stairs leading from the balcony to the main floor of the Theater, when the deceased "tripped on something and lost her balance, and fell all the way down the flight of stairs." She recited the accident as follows:

"A. We were all cutting up, laughing and talking. Erma and I started down the steps—we had been here on the last row of seats—we got up and went down these steps. When we got about here—there is a hand rail along here and a strip of wood. We were talking about walking on that strip and Erma crossed over to walk down this side and she tripped on something and lost her balance and when we got to these steps she fell all the way down these steps here.
* * * * *

"Q. This is a carpet on the stairs, is it not? A. Yes.

"Q. She started·down here—A. Yes, and crossed over, and when she did that she lost her balance and fell.

"Q. You say she fell? A. Yes.

"Q. Did she strike anything? A. Yes, she did. * * * She struck her head on this rail here and fell on down here.

"Q. Then what did she do? A. She fell down the rest of the steps, down to here.

\* \* \* \* \*

"Q. I will ask you to state to this jury, if you know, what the condition of this carpet was on these steps at the time Erma Padgett fell on those stairs? A. We didn't pay much attention to it at the time, but we have noticed it recently.

\* \* \* \* \*

"Q. I am asking you, Miss Fletcher, about the condition of the carpet on the night this girl fell down the stairs—you have stated that she tripped—I am asking you about the condition of the carpet on the stairs at that time, do you recall that? A. As we went back up the steps after we had been to the rest room we saw that it looked ragged and worn, but as I said awhile ago, we didn't pay much attention to it.

\* \* \* \* \*

"Q. This carpet on the stairs that you have referred to—over what portion of the stairs does this roughness or ragged, worn part extend—do you recall that? A. In the middle of the steps, where it is walked on—along in the middle of the stairs.

"Q. On the steps, do you mean—did it go all the way up—this worn portion? A. Say that again, I don't know what you mean.

"Q. I say, what portions of the carpet were worn —did the worn portions go all the way up to the top? A. No, I don't think so—about the middle, I think, where you walk on the steps.

"Q. That was near the part of the stairs where she fell? A. Yes."

The witness further testified that, in falling, the deceased lost the heel from one of her shoes. Appellee introduced a sister-in-law of the deceased, who testified that the carpet on the stairs was worn, and that she had tripped on the stairs about two weeks before the accident described by Miss Fletcher. However, she placed her accident at a different place on the stairway from that where it is claimed Miss Padgett fell. A brother-in-law of the deceased testified that he inspected the property two or three days after the alleged accident occurred, and described the carpet as worn all the way up the stairs. Miss Fletcher did not testify that the deceased tripped on a worn or torn place in the carpet, merely that she fell near a place where the carpet was worn. As a matter of fact, she testified that the deceased fell when she crossed over to go down the side of the stairway; whereas, she stated the carpet was worn in the middle of the stairway. Appellee places great reliance upon the case of City of Louisville v. Bailey's Guardian, 262 Ky. 486, 90 S. W. 2d 712. In that case, the Court held that proof of a defective condition in the street at the place the plaintiff stumbled was sufficient evidence of circumstances for a reasonable person to infer that the plaintiff was caused to stumble by one of the holes in the street. But that case is not authority for the contention of appellee in this case, because here there is no evidence that the carpet was defective at the place of the accident; the testimony merely shows that it was defective near the place Miss Padgett stumbled. It is insisted that the fact that a high heel from one of the shoes of the deceased was torn from the shoe is evidence that the heel was caught in a torn place in the carpet, causing the fall. But the mere fact that a high heel is lost in falling down fourteen or fifteen steps does not raise the inference that it was caught in a defect of the stairway, when it was not shown that the fall occurred at the place of the defect.

If it should be conceded that appellant negligently had permitted the carpet on its stairway to become defective and dangerous to life or limb, that alone does not constitute a tort. It additionally must be shown that the defect in the carpet was the proximate cause of Miss Padgett's fall, causing her injuries. One who seeks to recover in a court of law may not sustain his cause of action merely by proving negligence on the part of the

defendant; he must go further and prove that the injury was the proximate result of the negligence. That the negligence was the proximate cause of the injury may be proved by circumstantial evidence; but the circumstances must preclude a reasonable inference that the accident could have been caused in any other manner. Were this not the rule, juries would be permitted to speculate and suppose that an accident occurred as contended. A recovery based upon such speculation is abhorrent to the law. Kroger Grocery & Baking Co. v. Spillman, 279 Ky. 366, 130 S. W. 2d 786; Dalton v. Steiden Stores, 277 Ky. 179, 126 S. W. 2d 155; Kidd v. Modern Amusement Co., 252 Ky. 386, 67 S. W. 2d 466; Wigginton's Adm'r v. Louisville Ry. Co., 256 Ky. 287, 75 S. W. 2d 1046. Miss Fletcher testified that when Miss Padgett "crossed over to walk down this side she tripped on something and lost her balance *and when we got to these steps she fell all the way down these steps here.*" We gather from this evidence that Miss Padgett stumbled on the landing before she arrived at the second flight of steps; whereas, the testimony in respect to the defect, if any, in the carpet was that it was on, and in the middle of, the steps. We are of the opinion that it was necessary for the jury to speculate as to the proximate cause of the accident in this case; and, for that reason, the Court should have sustained appellant's motion for a directed verdict in its favor.

But even if appellee had proven the accident was the proximate result of a defective condition on the premises operated by appellant, we are of the opinion that the evidence raises no more than a speculation that the abscess from which Miss Padgett died was the result of the particular accident to which it is attributed. It was shown in the evidence that Miss Padgett suffered a severe injury to her head and eye in an assault made upon her by a stranger about two weeks previous to the accident upon which this action is founded. Appellee introduced the physician who performed the autopsy, and whose reputation and ability cannot be questioned; but he testified merely that, in his opinion, the abscess which caused death was the result of a traumatic injury; but in arriving at that opinion he took into consideration the history of the case. He said the injury which, in his opinion, caused the abscess could have happened one month, or four or five months, before the death of

the patient. He did not testify that, in his opinion, the abscess was caused by this particular fall.

Since we have concluded that the evidence relied upon by appellee to support the verdict and judgment is not sufficient to warrant the submission of the case to the jury, it is unnecessary for us to consider the evidence introduced by appellant.

The judgment is reversed, with directions that, if the evidence is the same upon another trial, the Court will direct the jury to return a verdict in favor of the defendant.