### LANGFORD v. VANDAVEER et al.

Court of Appeals of Kentucky.
Jan. 23, 1953.

### GUERINO v. COMMONWEALTH.

Court of Appeals of Kentucky
Jan. 23, 1953.

Wm. L. Sullivan, Henderson, for appellant.

L. Allen Rhoads and Dorsey & Dorsey, Henderson, for appellees.

STANLEY, Commissioner.

The judgment for $4,644.68 is for reimbursement of expenses incurred by the appellees in the hospital care and medical treatment of their minor daughter who was severely burned in the explosion of a butane or propane gas heater in a cabin of a motor court operated by the appellant, Clyde B. Langford. The case was tried with that of the daughter for damages for personal injuries in which a verdict of only $900 was returned. We are not here concerned with her case other than to say that both causes of action were based on the allegation that she was occupying the room as a "lawful guest for pay."

The instructions, obviously, predicated liability to the parents upon liability to the daughter. It was thus defined:

"It was the duty of the defendant, Clyde B. Langford, on the occasion spoken of in the evidence to exercise ordinary care to maintain the heating unit, its pipes and equipment in his tourist cabin No. 4 in a reasonably safe condition for use as such. If you shall believe from the evidence that he negligently failed to so maintain them, or any part of them, and that by reason of such failure on his part, if any there was, gas was permitted to and did escape from such unit, pipes

or equipment into cabin No. 4, in such quantities as to ignite or explode, and that the defendant knew of this condition or in the exercise of ordinary care should have known of it, and shall further believe from the evidence that such accummulated gas, if any there was in said cabin, did explode or ignite and burn and do bodily hurt and injury to the plaintiff, Ruth Vandaveer, while in said cabin No. 4, then the law is for the plaintiff and you should so find. But unless you believe as above required, you should find your verdict for the defendant."

It is to be noted that the instruction, in effect, holds as a matter of law that the relationship was that of innkeeper and guest. The appellant insists that the relationship did not exist and that his legal responsibility should have been measured by the duty to a trespasser, or, alternatively, that her status should have been submitted to the jury.

■ The term "innkeeper" has become obsolete except in legal terminology. Originally, to constitute an inn it was necessary that there should be a stable provided for the accommodation of the horses of the travelers. Kisten v. Hildebrand, 9 B.Mon. 72, 48 Ky. 72; 43 C.J.S., Innkeepers, § 1. In process of time "inn" and "hotel" became synonymous. With the advent of automobile traffic came similar facilities called tourist camps, motor courts or the coined word "motels." These really come closer to the old inn than ordinary hotels for they furnish accommodations for the motor cars of the travelers. Of such was the defendant's place, which consisted of several cabins or rooms with spaces between for the shelter of automobiles. It is clear the character of the place as respects the relationship of guest and the legal responsibility of the operator as an innkeeper is not lost because of the type of structure or facility being called by a different name. The same rules of law have been applied in cases of injuries to occupants of motor courts. See Ritchie v. Thomas, 190 Or. 95, 224 P.2d 543; Crockett v. Troyk, Tex.Civ.App., 78 S.W.2d 1012; Holcomb v. Meeds, 173 Kan. 321, 246 P.

2d 239; Graham v. North Carolina Butane Gas Co., 231 N.C. 680, 58 S.E.2d 757, 17 A.L.R.2d 881. Our present inquiry is whether the court properly held as a matter of law the young lady was a guest.

On Sunday afternoon of January 22, 1950, four young people, C. P. Howe, Bill Nash, Ruth Vandaveer and Myna Walker, drove to Henderson, Kentucky, from Albion, Illinois, a distance of sixty miles or more. Miss Vandaveer, the daughter of the appellees, 17 years old, and Miss Walker, about 15, were students in the high school at Albion and the young men worked in the oil fields near Henderson. The men went into a hotel where Howe's brother was staying but could not procure accommodations. The party then drove to Langford's Motor Court, a short distance from the city. This was about 8:30 o'clock. The car was stopped in a well lighted place near the entrance of the office and restaurant. Howe met Langford at the door and asked for rooms for four oil men, saying that one of them was then at work but would return early enough to get some rest before checking out time. Langford and two other witnesses testified to this. Langford showed the cabins to the two men, lighted the heaters and explained to them how the valves worked. He and Howe returned to the office and Howe filled out a registration card, giving his address and an automobile license number and signed it, "C. P. Howe and party." He filled in the figure "4", showing the number of people in the party and paid $6 for the two rooms. Neither Howe nor Miss Walker testified. Miss Vandaveer and Nash testified he stood by the side of the automobile at all times. It is undisputed that Langford passed twice within ten or fifteen feet of the parked automobile. He says he looked at the car and could have seen anyone in it but saw no one. As the car started over to the cabins he noted that the license number was not the same as that registered and he entered the correct number on the card. (It appears that Howe had given the number of his own car instead of Nash's which he was driving.) Miss Vandaveer testified that when Langford passed the automobile

she was sitting on the edge of the back seat looking into the small mirror in front, combing her hair, and Miss Walker was on the front seat doing the same thing. Both were erect and could be easily seen. Ewing Lowry testified that on leaving the office to go home he passed close to the automobile parked near the door and looked into it. He saw no one but if one had been hiding on the floor, she could not be seen.

According to Miss Vandaveer and Nash, the party entered one of the cabins and then the other where they spent some time together. Then the boys left about ten o'clock to go to work. They planned to return early enough to drive the girls back to Albion in time for school. After they had gone, she and Myna concluded to occupy separate cabins. She took No. 4 and retired about eleven o'clock. Neither had any baggage. On the contrary, Langford and his sister testified that about 11:15 Howe came to the restaurant, ate a sandwich, drank a cup of coffee and left with three coca colas. Nash testified he and Howe left the motor court about ten o'clock and worked until seven the next morning. However, there is evidence that immediately following the explosion Howe was there. A man in or about the cabin was heard to say, "I told you not to do that." One of these witnesses, according to Langford, first told him of the presence of the girls on the premises.

The relation of innkeeper and guest is a mutual contractual one, and the existence of intention by both parties is an essential element. It is an exceptional case where that requisite is not clearly established, usually by implication. Ordinarily, where one holds himself out to the public as an innkeeper, and is accustomed to receive all who apply and a transient goes to the house to procure accommodation and receives entertainment, the relationship is created. But it is not necessarily the result. 28 Am.Jur., Innkeepers, Secs. 20, 26. It may require circumstances of more evidentiary value where the matter of mutual rights and obligations concerns the occupancy of a room and personal injuries are sustained than where, for example, it is a matter of bailment or the loss of baggage. All authorities agree that it is not essential that the guest shall have registered, for that is merely evidence, though it may be an important circumstance in determining the status. Hill v. Memphis Hotel Co., 124 Tenn. 376, 136 S.W. 997, 34 L.R.A.,N.S., 420; Moody v. Kenny, 153 La. 1007, 97 So. 21, 29 A.L.R. 474; 28 Am.Jur., Innkeepers, Sec. 19.

In the case at bar, the intention of the young lady to become a guest in the legal sense is apparent. The question is whether or not she was intentionally or knowingly received as such by the proprietor of the motor court. Generally, an innkeeper, though the conductor of a semi-public institution, is not under obligation to receive as a guest everyone who applies. He has the right to reject or expel persons whom he reasonably deems objectionable. Raider v. Dixie Inn, 198 Ky. 152, 248 S.W. 229; Clemons v. Meadows, 123 Ky. 178, 94 S.W. 13, 6 L.R.A.,N.S., 847, 124 Am.St. Rep. 339; State v. Steele, 106 N.C. 766, 11 S.E. 478, 8 L.R.A. 516. Under this rule of law a person may not impose himself upon the proprietor and become a guest without his knowledge or intention to receive him. One becomes a guest only if he is received to be treated as a guest and the intention to become such must be communicated to the innkeeper or his agent. This is a fact to be proved by evidence, definite or circumstantial. Haff v. Adams, 6 Ariz. 395, 59 P. 111; 43 C.J.S., Innkeepers, § 3b. As is well said in Moody v. Kenny, 153 La. 1007, 97 So. 21, 22, 29 A.L.R. 474, "a mere guest of the registered occupant of a room at a hotel, who shares such room with its occupant without the knowledge or consent of the hotel management, would not be a guest of the hotel, as there would be no contractual relations in such case between such third person and the hotel proprietor".

The appellees submit that irrespective of knowledge of the appellant, their daughter should be deemed a guest of a hotel guest. There is no doubt that an innkeeper owes to persons invited to the premises the duty of ordinary or reasonable care to protect them from injury and that

usually that duty applies to a guest of a guest, he being deemed an invitee or licensee. 43 C.J.S., Innkeepers, § 22(2); 28 Am.Jur., Innkeepers, Secs. 133, 135; Moody v. Kenny, 153 La. 1007, 97 So. 21, 29 A.L.R. 474. The case at bar is distinguished from the Moody case where, with the assistance of a hotel clerk, a man and wife were assigned a room of a registered guest at his suggestion because there was no available room for the couple, and he consented to occupy another room with a friend. Here we have the acceptance of four men as guests when there were in fact two men and two women. Under the appellant's evidence, the young lady slipped into the cabin and occupied the room for the night without the proprietor's knowledge or consent. This places her in a different category from an invitee of a bona fide guest. It has been held by a court of original jurisdiction that the rights of hotel guests are not assignable or transferable, so where a registered guest, without permission from anyone representing the hotel, transferred a room to a woman she had no right to its possession. Hennig v. Goldberg, 188 Misc. 609, 68 N.Y.S.2d 698.

It seems to us that it was error to hold as a matter of law that the appellees' daughter was a guest of the motor court and not to have submitted the question of fact to the jury. There is no dispute in the evidence that Howe procured the two rooms for four men. But if the proprietor of the motor court saw the young women in the car under the circumstances described and could reasonably have anticipated or understood that they, or at least the plaintiffs' daughter, would occupy the cabin, then the jury could find he accepted her as a guest and assumed the legal responsibility owing in such relationship. The given instruction defining the duties of the defendant as an innkeeper is not criticized and seems to be correct.

Ruth testified that the heating stove was burning low when she went to bed. She awakened and "smelled something funny—some funny odor, I didn't know what it was." She sat on the edge of the bed and lighted a match so she could see her way to turn on the electric light switch near the door in order to see what was causing the odor. Immediately there was a violent explosion. She denied going about the stove. The explosion occurred about four o'clock in the morning. The plaintiffs' evidence is that the heater was not properly ventilated to carry off the fumes and unburned gases and did not have proper safety devices.

The defendant's proof is to the effect that the heater and appliances were properly installed and ventilated. They had been regularly inspected and found in good order. After the explosion, the pipes were checked and no leaks found. The stove valve had been partially opened and the gas was not burning. There were a number of burnt matches beneath the door of the heater and scattered about the floor. They were not there when the room was turned over to Howe and Nash.

The evidence authorized the submission of the issue of the defendant's negligence toward a guest. It is not sufficient if the young lady be regarded as a trespasser.

■ The court refused an offered instruction on contributory negligence. In addition to the foregoing evidence of the conditions which may afford an inference that an attempt had been made to light the heater, the young lady was a high school senior studying chemistry in which she used a Bunsen burner. She lived in the midst of the Illinois oil fields and was familiar with the odor of natural gas. The jury may well have believed that lighting the match under the conditions was contributory negligence. We are of opinion that the evidence required an instruction on that defense.

The judgment is reversed.