STARKS BUILDING CO.

v.

ELTINGE.

ELTINGE.

v.

COLONNADE CO.

Court of Appeals of Kentucky.

June 11, 1954.

S. Lloyd Cardwell, Thos. J. Wood, Stites, Wood, Helm & Taylor, Louisville, for Starks Building Co.

Jack Q. Heath, Julius Leibson, Louisville, for Martha Eltinge.

Robert C. Hobson, John P. Sandidge, Woodward, Hobson & Fulton, Louisville, for Colonnade Co., for appellee.

CULLEN, Commissioner.

The Colonnade Restaurant, owned and operated by the Colonnade Company, occupies space in the basement of the Starks Building, in Louisville, under a lease from the Starks Building Company. On January 6, 1951, Mrs. Martha Eltinge, while descending the stairway from the lobby of the Starks Building on her way to the restaurant for lunch, fell and was injured. She sued the Starks Building Company and the Colonnade Company, alleging a defect in the stairway. The case was submitted to the jury, which returned a verdict against the Starks Building Company in the amount of $3,000, and exonerated the Colonnade Company. The Starks Building Company has appealed from the judgment entered on that verdict. Mrs. Eltinge has filed a cross-appeal against the Colonnade Company, merely for the purpose of protecting her rights in the event the judgment against the Starks Building Company should be reversed.

The sole contention of the Starks Building Company, on this appeal, is that it was entitled to a directed verdict because the evidence showed conclusively that the stairway was leased to the Colonnade Company, and the Starks Building Company had no control over, or responsibility for, the stairway.

It appears that the defect in the stairway consisted of the fact that the edges of the

marble steps were sloped, slanted, or "scooped out," so that when a person's foot, in descending the stairs, was so put down as to extend over the edge of the step, there was a tendency for the foot to slip off. There was a conflict in the evidence as to whether the defect was the result of wear, or of original design.

 The Starks Building Company, in support of its position that the stairway was leased to and was under the control of the Colonnade Company, relies upon the following facts: (1) In the current lease agreement, reference is made to an attached blue print for the purpose of identifying the leased area, and the stairway shows on the blue print; (2) in the immediately preceding lease agreement, reference was made to an attached plan, for the purpose of identifying the leased area, and the stairway shows on that plan; (3) no member of the general public uses the stairway except for the purpose of going to or leaving the restaurant; (4) there are no other tenants of the building who use any part of the basement, and the stairway therefore is not for the common use of several tenants; (5) the Starks Building Company employes do not use the stairway except for the incidental maintenance work in the basement area; (6) the stairway was located originally in accordance with the desires of the Colonnade Company; (7) bannisters and carborundum tread steps were installed by the Colonnade Company; (8) the Colonnade Company cleans the stairway and keeps the stairway area painted.

Opposed to the position of the Starks Building Company are the following facts: (1) Neither the current lease agreement nor the preceding lease agreement specifically mentions the stairway as being part of the leased premises; (2) both leases state that the area leased is "part of the basement;" (3) although the stairway shows on the blue print attached to the current lease, and on the plan attached to the preceding lease, both leases state that reference is made to the blue print or plan for the purpose of identifying the part of the *basement* that is being leased; (4) the current lease gives specific permission to the Colonnade Company to maintain a sign on the stairway, from which it may be inferred that the lessor intended to retain control over the stairway; (5) the current lease gives the Colonnade Company the privilege of using the freight elevator to the basement, and a service stairway to a back alley, from which it may be inferred that the lessor intended to retain the right to control all means of access to the basement except to the extent specifically relinquished by the lease; (6) the night watchman for the Starks Building Company uses the stairway in making his regular rounds, and meter readers use the stairway to reach meters serving the main part of the building; (7) the Colonnade Company was required to obtain the approval of the Starks Building Company before installing the bannisters and tread strips, and before painting the stairway area; (8) the door to the restaurant is in the basement, and not at the head of the stairway.

Under the facts recited above, we cannot say the court erred in submitting to the jury the question of whether the Starks Building Company had retained control of the stairway, or had leased it to the Colonnade Company. The question did not depend solely upon the written lease, but involved extrinsic evidence from which reasonable men might draw different inferences. Although the court perhaps could have assumed responsibility to answer the question as a matter of law, we think that the issue was sufficiently one of fact to justify its submission to the jury. See note, 65 A.L.R. 648.

The Starks Building Company maintains that since the stairway was a necessary adjunct to the restaurant, and was not for the common use of several tenants, there is an implication of law that the stairway was included in the lease. Reliance is had on Martel v. Malone, 138 Conn. 385, 85 A. 2d 246. However, as we construe that case, the only implication indulged in by the court was that the tenant had the *right to use* the stairway, and the basis upon which the court held the landlord not liable was that there was no *evidence* to show that the

landlord exercised any control over the stairway.

In Nash v. Searcy, 256 Ky. 234, 75 S.W. 2d 1052, a tenant had leased the entire sixth floor of a building, and one of his employes was injured in descending the stairway from the sixth floor to the fifth. The court held that the duty to maintain the stairway remained with the landlord, although recognizing that the tenant had the right to use the stairway as a necessary appurtenance to the leased premises. From this we gather that the implication, arising from the fact that a stairway is a necessary adjunct to leased premises, extends only to the right to use and not to the right to control.

The Colonnade Company relies upon the presumption that an owner of real estate retains the right of control until he specifically parts with that right. McGinley v. Alliance Trust Co., 168 Mo. 257, 258, 66 S.W. 153, 56 L.R.A. 334. We think such a presumption properly may play a part in this case.

Without expression of opinion, we also call attention to the line of cases which hold that a landlord may be held liable for an unsafe condition of premises that are leased for purposes of public entertainment. See note, 123 A.L.R. 870.

The judgment is affirmed.