Arch J. MARMOR, Appellant,

v.

Helen V. MARMOR et al., Appellees.

Arch J. MARMOR, Appellant,

v.

Neville COTTON, Appellee.

Court of Appeals of Kentucky.

Dec. 16, 1966.

Leslie W. Morris, II, Stoll, Keenon & Park, Lexington, for appellant.

C. E. Schindler, H. Solomon Horen, Louisville, Chenault, Coy & Sword, Richmond, for appellee Helen V. Marmor.

George T. Ross, John W. Palmore, Richmond, for appellees Neville Cotton and Harold W. Thomas.

HILL, Judge.

This is an appeal from a verdict and judgment in two consolidated actions resulting from a head-on collision between the automobile owned and driven by appellant and a truck owned by appellee Neville Cotton and driven by appellee Harold W. Thomas. The wreck occurred on a sharp curve on U. S. 277 in Madison County on the afternoon of October 13, 1959. The first action was filed by Cotton against Arch J. Marmor to recover damages to his truck. The second action to be filed was that of Helen V. Marmor, wife of Arch J. Marmor, against her husband and the owner and the operator of the truck in which she sought damages for pain and suffering, permanent disability, and reimbursement of medical and hospital expenses.

A five-day trial resulted in a verdict by the jury in favor of Helen V. Marmor for $38,431 against her husband only and a verdict in favor of Cotton against Arch J. Marmor for $870 for damages to his truck.

Without listing grounds assigned for reversing the judgment, we shall discuss them in the order in which they appear in appellant's brief. But first we relate the facts.

The highway on which the collision occured is a two-lane blacktop road 18 to 18.8 feet wide. A moderately gentle rain was falling. The collision occurred on a sharp left-hand curve for the truck while it was traveling at a speed of about 15 miles per hour.

Harold Thomas was operating the dump truck owned by Neville Cotton en route from Richmond to Winchester. The truck was pulling a lowboy loaded with a "sheep's foot" roller. The truck was seven feet eight inches wide, the lowboy was eight feet one inch wide, and the "sheep's foot" roller was nine feet wide and extended some eleven inches over and beyond the right side of the lowboy.

Appellant Arch J. Marmor was driving his Ford automobile in the direction of Richmond. His wife was the only passenger in the car.

Coming into the curve, Thomas had the truck in the middle of the road, according to his testimony; but on observing the oncoming Ford automobile 200 feet away, he moved to his side of the road and was on his side of the road when the Ford struck the left front end of the truck. Thomas further testified that when the Ford was 50 feet away and still on the wrong side of the center of the road, he,

Thomas, started to ditch the rig and ran part of the right wheels off the blacktop.

Appellant testified he approached the curve at 10 miles per hour on his own side of the road when Thomas came around the curve on the wrong side of the center line. Thus, a sharp issue was presented to the jury that was resolved adversely to appellant.

It is first contended by appellant that he was entitled to an instruction stating that it was negligence *per se* to operate a vehicle the width of which exceeded nine feet in violation of KRS 189.221.

It is admitted by appellee Thomas that the lowboy was 97 inches wide, one inch in excess of the limitation contained in KRS 189.221. Appellant contends the "sheep's foot" roller was nine feet wide. Appellees Thomas and Cotton admit this but contend the extra foot over the eight feet allowed by statute extended over the right side (Thomas' right) of the lowboy. The deposition of Thomas, taken on discovery, indicated the one foot overwidth of the lowboy extended equidistantly on each side of the lowboy; but Thomas testified positively on the trial that he intended to state the foot overwidth extended only on the right side of the lowboy.

It makes little difference whether the overwidth of one foot was equally divided on each side of the lowboy as the Ford automobile struck the left front end of the truck and did not touch the "sheep's foot" roller or the lowboy.

Ordinarily, a violation of a statutory duty is evidence of negligence entitling the adverse party to submission of that issue to the jury. Phoenix Amusement Co. v. White, 306 Ky. 361, 208 S.W.2d 64, and Greyhound Corporation v. Hounshell, Ky., 351 S.W.2d 64. However, there must be evidence, or a fair inference from the evidence, that the violation of the statute was a proximate cause of the accident. Magness' Adm'x v. Hutchinson, 274 Ky. 226, 117 S.W.2d 1041.

In the present case, there is no evidence that the width of the rig was a proximate cause of the wreck. Therefore, it is concluded the trial court did not err in refusing to give the offered instruction.

Appellant next argues that the testimony of Ralph Snyder (claimed to be an expert) and numerous photographs overcame the testimony of Thomas and Mrs. Marmor, entitling him to a judgment n. o. v. With this position we cannot agree. The conflicting evidence, hereinabove referred to, was ample to sustain the verdict.

Appellant assails the ruling of the trial court in allowing the witness Valtner Isaacs to testify as he was present in the courtroom in violation of the court's rule pertaining to the exclusion of witnesses from the trial before giving their testimony. CR 43.09. Isaacs was referred to by appellant as "almost" the only eyewitness other than the immediate parties in the vehicles involved in the wreck. He heard only the evidence of the two photographers and an engineer. In so doing, he heard nothing that enabled him to change or modify his own testimony. The trial court has some discretion in determining whether there has been a violation of the rule under CR 43.09, and the ruling of the trial court allowing Isaacs to testify was not in our opinion an abuse of discretion. See Illinois Cent. R. Co. v. Outland's Adm'x, 160 Ky. 714, 170 S.W. 48, and Browley v. Murkison, Ky., 282 S.W.2d 352.

Appellant questions the failure of the trial court to give his offered instructions one through six, inclusive.

These offered instructions set out the various and sundry statutory duties; such as, reasonable rate of speed, lookout duty, and to keep the vehicle under reasonable control. The giving of such offered instructions might not have been improper or prejudicial to either side, but they were unnecessary. The instructions given simply allowed the jury to find

against the operator the jury found to be on his wrong side of the highway and to find for neither party under the usual "dog fall" instruction. We do not consider the failure of the trial court to give the instructions offered by appellant was in any way prejudicial to him.

Appellant next complains of improper remarks "throughout the trial prejudicial" to him. A sample of the remarks is quoted in appellant's brief. Without quoting the remarks objected to, it is sufficient to say we have carefully examined those listed as sample and other similar remarks in the record and do not find them to be prejudicial.

■ As final ground for reversing the judgment, appellant contends the verdict of $38,431 is excessive.

Mrs. Marmor's total special damages for medical and hospital care amounted to $8,431. It is apparent the jury intended $30,000 of the verdict as compensation for pain and suffering and disability.

At the time of her injuries, Mrs. Marmor was 54 years of age, in good health, with a life expectancy of 23.40 years.

After the accident she was taken by ambulance to a hospital in Richmond. She arrived in a semiconscious condition bleeding severely. A preliminary examination disclosed she was suffering from a severe concussion of the brain; a deep ragged eight-inch laceration across the forehead, which cut the temporal artery and required 23 sutures; a comminuted fracture of the tibia of the right leg, which is the main weight bearing bone of the lower leg; and a traverse fracture of the fibula of the same leg. Subsequent examination further disclosed an injured upper arm, left breast, and left chest. After the bleeding was controlled and a temporary leg cast applied, she was removed by ambulance to a Louisville hospital. The fragments of the tibia were displaced in such an unsatisfactory condition open surgery was necessary six days later. The fragments were fastened with bone screws, and a long plaster cast was applied from toes to upper thigh.

She suffered constant pain and could not see during the first week because of the blow to her head and her swollen eyes; she could not move or talk and was fed by tubes; she could not leave her bed or do anything for herself. A kidney complication developed that prevented normal kidney movement for four weeks and required a catheter, which produced infection and severe pain.

After six and one-half weeks in the hospital, she was transferred by ambulance to her sister's home in Cincinnati, Ohio, where she was confined to a hospital bed for another month. She was then taken by ambulance back to Louisville for the removal of the upper part of the cast. Then she was returned to her home for another six weeks of bed confinement. During all periods of confinement, she required and paid for the services of practical nurses. The leg cast was removed three months after the accident and was replaced with a leather lace-up steel brace, which she wore for a year. Therapy treatments were administered at Kentucky Baptist Hospital, Louisville, Kentucky.

At the time of the trial, some four and one-half years after the accident, she was still complaining of constant pain and was still being treated by a doctor. She was wearing a back brace continuously and was using a cane. She testified that she had pain in her back and head; that her head was still numb, and she couldn't pick up objects such as money, needles, and the like; that her legs were stiff and her knees gave way causing her to fall often; that her leg was swollen and required support stockings; and that she couldn't do her housework.

One of her several doctors testified that at the time of the trial she had pain and tenderness in her left arm above the elbow; she had twenty percent limitation of forward spine movement; marked impairment in the raising and lowering function

of the right foot; fifty percent loss of motion in turning the right foot inward and outward; fifty percent loss of usage of the right toes; deformity to the lower third of the right leg; calcium loss in the leg bones and pain and limited motion in the lower back region; and that she was permanently disabled.

We have no difficulty in concluding that Mrs. Marmor suffered severe pain over a long period of time and has sustained permanent disability. The amount of compensation to which she is entitled for pain and suffering and permanent disability was for the jury to decide. The verdict of the jury will not be disturbed unless it appears excessive at first blush. We do not consider the verdict excessive.

The judgment is affirmed.