**BLUE GRASS RESTAURANT COMPANY, Inc., et al., Appellants,**

**v.**

**Herbert R. FRANKLIN, Appellee.**

**BLUE GRASS RESTAURANT COMPANY, Inc., Appellant,**

**v.**

**EASTLAND INVESTMENT COMPANY, Appellee.**

Court of Appeals of Kentucky.

Feb. 16, 1968.

William H. Fortune, Harbison, Kessinger, Lisle & Bush, John L. Davis, Michael L. Ades, Stoll, Keenon & Park, Lexington, for appellants.

Amos H. Eblen, Eblen, Howard & Milner, Lexington, G. A. Chadwick, Jr., Washington, D. C., for appellees.

STEINFELD, Judge.

Herbert R. Franklin was attending a banquet in a motel. While descending steps leading to rest rooms available to the public he fell and was injured. He recovered judgment for $12,537.00 jointly against Blue Grass Restaurant Company, Inc. and Eastland Investment Company. Subsequently, the trial court adjudged that Blue Grass should fully indemnify Eastland. Eastland and Blue Grass appeal from the judgment for Franklin, and Blue Grass appeals from the judgment awarding indemnity to Eastland. We affirm.

Under a "License Agreement" or franchise issued by Holiday Inns of America, Inc., Eastland constructed and operated a motel in Lexington, Kentucky.

On January 20, 1959, Blue Grass leased from Eastland 4,100 square feet of space containing a restaurant, a cocktail lounge and kitchen. Approximately a year and a half later Eastland constructed an addition to the motel building. When completed it contained a lobby and banquet room on the first floor, with a stairway which was between five and six feet in width leading down to the basement where there were located a bakery, storage area used by Eastland and Blue Grass, several offices, one of which was used by Eastland, and public rest rooms.

The stairway which was normal and well lighted had nine steps, a landing and then two steps and was enclosed by a wall on each side. It had no handrails. An ordinance in effect in the city of Lexington required handrails on both sides.

By interlineation the lease was amended to increase the leased space from 4,100 to 10,000 square feet and to include "banquet room, offices and rest rooms." At all times it provided that Blue Grass would "make all the repairs on the interior of the

premises * * * leased" and would "save harmless lessor from all claims for damages to property or persons arising from lessee's use and occupancy of the leased premises, or asserted by any employees, customers or invitees of the lessee." Employees of Blue Grass kept the stairways clean.

Franklin, who was not a registered guest occupying a sleeping room at the Holiday Inn, was the principal speaker at a dinner being served in the banquet room by Blue Grass on May 23, 1963. He left that room and approached the stairway. He testified:

"Q. 32 Alright, will you describe the stairs for us?

A. Well, the stairs * * * the beginning of the stairs * * the stairway itself is a, well a normal stairway, I would say, consisting of nine or ten steps.

Q. 33 Is there a partition beside it?

A. There's a wall on both sides.

Q. 34 And what did you do when you got to the stairs?

A. I started down the stairs.

Q. 35 Then what happened?

A. Well, very near the top of the stairs I slipped, and as I slipped, I started to fall and I attempted to catch myself * * to get my balance * * * and when I did, there just wasn't any step there and I, of course, threw out my arms in this manner (indicating) to try to catch onto a banister or handrail or something, and as I did, there was nothing there. I went down and when I went down, of course, I struck my elbow and that's when the accident occurred."

After admitting that he had no trouble seeing the stairway in front of him, he was asked and answered:

"Q. What caused you to fall?

A. I don't know. I slipped.

Q. The truth of it is you don't know what caused you to fall, isn't it?

A. Yes * * * no sir. I fell because I attempted to catch * * *. I slipped and I attempted to stop my fall by regaining my balance. I didn't do that. I reached with my hands in this manner to catch hold of a banister or rail and it wasn't there. There was nothing there."

Interrogation followed regarding a deposition he had given:

"Q Isn't it true that you also stated in that deposition that you tried to catch yourself on the next step and the next step was not there?

A. I said that * * * and as I say here again today, that when I slipped, I attempted to catch with my other foot and I fell forward.

* * * * * *

Q. Let me read this answer to you, then, if you don't recall Question 110, the question asked you, 'Did you trip?' Answer: 'I lost my footing, if this is what you mean. I lost my footing and I attempted to recover.'

A. That's right.

Q. 'I thought I was, then I lost my balance.'

A. Yes, sir.

Q. All right, 'Then I tried to catch myself on the next step and the next step was not there. That is just about the way it felt like.' Is that the correct answer?

A. That's right."

Appellants do not complain of the form of instruction which the court gave to the jury that the ordinance required that handrails be provided on each side of the stairway, nor do they argue that the failure to provide handrails was not negligence.[1] The absence of such latter contention and an intervening cause which precipitated Mrs. Levitt's fall distinguishes this case from Brown Hotel v. Levitt, 306 Ky. 804, 209 S.W.2d 70 (1948). They contend that the well lighted stairway and the absence of handrails were clearly visible to Franklin; that it was "his misstep which precipitated his fall", and that the lack of handrails was not the proximate cause of his injury. They insist that their motion for a directed verdict should have been sustained. They cite City of Pineville v. Selvey, Ky., 312 S.W.2d 897 (1958); Lanzner v. Wentworth, Ky., 315 S.W.2d 622 (1958); Milliken v. Union Light, Heat & Power Co., Ky., 341 S.W.2d 261 (1960); Montgomery Ward v. Ellis, Ky., 380 S.W. 2d 223 (1964) and Marmor v. Marmor, Ky., 409 S.W.2d 526 (1966). In countering Franklin relies on Porter v. Cornett, 306 Ky. 25, 206 S.W.2d 83 (1947); Greyhound Terminal of Louisville v. Thomas, 307 Ky. 44, 209 S.W.2d 478 (1948); City of Madisonville v. Poole, Ky., 249 S.W.2d 133 (1952); Humbert v. Audubon Country Club, Ky., 313 S.W.2d 405 (1958); Wilkinson v. Family Fair, Inc., Ky., 381 S.W.2d 626 (1964); and Restatement of Torts, Vol. IV, § 893, p. 495, Comment, Illustration 5, p. 497.

In Greyhound Terminal of Louisville v. Thomas, supra, we said:

"The violation of the terms of an ordinance is negligence per se; but in an action for damages, such violation must be the proximate cause of the accident to permit recovery for its violation. Pryor's Adm'r v. Otter, 268 Ky. 602, 105 S.W.2d 564; Home Laundry Co. v. Cook, 277 Ky. 8, 125 S.W.2d 763. In Durham v. Maratta, 302 Ky. 633, 195 S.W.2d 277, 279, we said: 'If the injury complained of is one which was intended to be prevented by the Statute and Ordinance, supra, the violation of their provisions must be considered as the proximate cause of the injury. 20 R.C.L. 43.'

"There can be no doubt that the purpose of the ordinance is to prevent persons descending or ascending a stairway from falling thereon. Appellee testified to facts from which a jury could not escape the conclusion that, had a handrail been maintained on both sides of the stairway in question, she would not have fallen. That being true, under the rule above recited, the failure to maintain the handrail in accordance with the terms of the ordinance must be considered to have been the proximate cause of appellee's injuries. * * *."

Also see Ross v. Jones, Ky., 316 S.W.2d 845 (1958) and 38 Am.Jur. 838, Negligence, § 166; Restatement of The Law, Second, Torts, § 288B.

The ordinance which was violated was intended to prevent the injury which Franklin sustained, therefore, the failure to comply must be considered a proximate cause. Greyhound Terminal of Louisville v. Thomas, supra.

The trial court instructed the jury that Franklin had the right to use the stairway but that it was his duty "to exercise that degree of care which an ordinary prudent person would exercise in traversing these stairs." The jury found Franklin free of negligence on evidence which was sufficient to support that verdict. We cannot disturb this finding of fact unless clearly erroneous and we do not consider it so. Simons v. Allen, Ky., 309 S.W.2d. 755 (1958); Crowe v. Taulbee, Ky., 350 S.W.

1. See Majestic Theatre Co. v. Lutz, 210 Ky. 92, 275 S.W. 16, 17 (1925); Phoenix Amusement Co. v. Padgett's Adm'r, 301 Ky. 338, 192 S.W.2d 105 (1946) and Phoenix Amusement Co. v. White, 306 Ky. 361, 208 S.W.2d 64 (1948) on this and closely related subjects.

2d 620 (1961); Com., Dept. of Highways v. Stocker, et al., Ky., 423 S.W.2d 510, (decided January 12, 1968).

Eastland contends that even though Franklin is permitted to recover it is not liable. It claims that Blue Grass had complete control over the stairs and that the law in Kentucky places on the tenant sole responsibility for the proper maintenance of passageways over which he has control. Starks Building Company v. Eltinge, Ky., 269 S.W.2d 240 (1954); Mackey v. Allen, Ky., 396 S.W.2d 55 (1965); Wright and Taylor, Inc. v. Smith, Ky., 315 S.W.2d 624 (1958) and Home Realty Co. v. Carius, 189 Ky. 228, 224 S.W. 751 (1920).

In Louisville Trust Company v. Morgan, 180 Ky. 609, 203 S.W. 555, 7 A.L.R. 396 (1918) we decided that an action against the lessor of a hotel for the death of a guest because of fire was sufficiently pleaded, it having been alleged that the building ordinance was violated. In 1932 we held a bank operating a hotel as trustee and the president thereof in immediate control both liable for damages for death of a guest proximately resulting from violation of a statute requiring safeguards against fire. Pirtle's Adm'x v. Hargis Bank and Trust Co., 241 Ky. 455, 44 S.W.2d 541 (1931); Taylor's Adm'x v. Hargis Bank & Trust Co., 241 Ky. 36, 44 S.W.2d 549 (1931) and Pirtle's Adm'r v. Hargis Bank & Trust Co., 243 Ky. 752, 49 S.W.2d 1002 (1932). Also see Turner v. Taylor's Adm'x, 262 Ky. 304, 90 S.W.2d 73 (1936).

■ The evidence is clear that Eastland used the stairway. It was the route to areas retained by Eastland including an office used by its President and at least two other employees. It knew from the time it constructed the addition, including the stairway, that the ordinance requiring handrails had been violated and that guests were using those stairs to reach the rest rooms. Under these circumstances it is our decision that Eastland never surrendered complete control to Blue Grass, therefore, it is within the exception to the gen-

eral rule which applies to leased premises. Lindsey v. Kentucky Develoment Co., 291 Ky. 253, 163 S.W.2d 499 (1942). It had knowledge that handrails were not provided by Blue Grass. In Nisbet v. Lofton, 211 Ky. 487, 277 S.W. 828 (1925), we said:

"A landlord who authorizes or knowingly permits an act on the part of his tenant which it was his duty to prohibit, whereby a third person is injured, is responsible for such injury, if the tenant would be liable. Riley v. Simpson, 83 Cal. 217, 23 P. 293, 7 L.R.A. 622; Campbell v. Louisville Coal Mining Co., supra [39 Colo. 379, 89 P. 767, 10 L.R.A., N.S., 822]."

■ Eastland was the operator of an inn. Langford v. Vandaveer, Ky., 254 S. W.2d 498 (1953); Parrish v. Newbury, Ky., 279 S.W.2d 229 (1955). It was a part of the chain which then and now advertises that it is "The Nation's Innkeeper". The lease between Eastland and Blue Grass showed that Blue Grass became the tenant "for the purpose of operating a restaurant and cocktail lounge" in the "motel property". It was given "the exclusive right and privilege of conducting a restaurant and cocktail lounge and of food sales and meal service throughout said motel premises, including room service to guests and service to any meetings requiring such service which may be held in the areas of the motel premises not leased * * *". The rental was "five (5%) of all gross sales and gross receipts" with a "minimum guarantee of $650.00 per month". The activities of Blue Grass were an integral part of the innkeeper's operation and Franklin's presence was of mutual interest, therefore, we consider him a guest of the inn. Langford v. Vandaveer, supra.

■ Each patron in an inn is entitled to respectful as well as decent treatment by the innkeeper, its servants, and other patrons and that his safety shall not be imperiled. The operator must so select its employees that they are unlikely to commit violence upon the guest. Leding-

ton v. Williams, 257 Ky. 599, 78 S.W.2d 790 (1935); 29 Am.Jur. 45, Innkeepers, § 57. While the innkeeper is not the insurer of guests it must exercise ordinary or reasonable care for their safety. Sidebottom v. Aubrey, 267 Ky. 45, 101 S.W.2d 212 (1937); Cumberland Hotel Operating Co. v. Hartman, 264 Ky. 300, 94 S.W.2d 637 (1936); 43 C.J.S. Innkeepers § 22, p. 1173. The duty is upon the innkeeper to keep hallways in a condition so that guests may pass in safety. Burgauer v. McClellan, 205 Ky. 51, 265 S.W. 439 (1924). In Brown Hotel Co. v. Marx, Ky., 411 S.W.2d 911 (1967) we held the innkeeper liable to a guest when injured because a faucet handle in a bathroom crumbled in his hand. The famous Seelbach Hotel in Louisville was adjudged liable because it failed to furnish a crib for an infant who was injured when it fell against a very hot pipe from the regular bed in which it was sleeping. Seelbach, Inc. v. Cadick, Ky., 405 S.W.2d 745 (1966). Also see Goldberg v. Wunderlich, 248 Ky. 798, 59 S.W.2d 1018 (1933) and Texas Co. v. Sowers, Ky., 258 S.W.2d 924 (1953). Eastland cannot escape liability to Franklin based on its own negligence —the absence of handrails in violation of the ordinance. Mullins v. Nordlow, 170 Ky. 169, 185 S.W. 825 (1916); 32 Am. Jur., Landlord and Tenant, § 817, § 652.

Blue Grass contends that the "hold harmless clause" in the lease was not intended to indemnify Eastland against liability resulting from Eastland's own negligence. It cites many cases and argues that the rule of construction we stated in Employers Mutual Liability Insurance Co. v. Griffin, Ky., 280 S.W.2d 179, 53 A.L.R.2d 967 (1955) applies, to-wit:

"It is the general rule that an indemnity contract will be construed to cover only such losses, damages or liability as reasonably appear intended by the parties. 42 C.J.S., Indemnity, § 12. A contract of indemnity will not be construed to indemnify the indemnitee against losses resulting from the latter's negligence unless such intention is expressed in un-

equivocal terms. 27 Am.Jur., Indemnity, Section 15; 42 C.J.S., Indemnity, § 12. Such interpretation will not be given a contract unless no other meaning can be ascribed to it and every presumption is against such an interpretation. Mitchell v. Southern Ry. Co., 124 Ky. 146, 74 S.W. 216, 24 Ky.Law Rep. 2388."

There we held that the indemnity provision was not "sufficiently broad or unequivocal" to impose liability upon the contractor for an injury caused by the owner's negligence.

Eastland claims that "a fair reading of the lease as a whole indicates that the parties intended for the lessee to be responsible for any claims asserted by its employees, customers, or invitees regardless of the cause of injuries." It attempts to distinguish the cases cited by Blue Grass including Fosson v. Ashland Oil & Refining Co., Ky., 309 S.W.2d 176 (1958), in which we said:

"* * * It is true that when there is a doubt as to the meaning of an indemnity clause the construction should be against the contention that the contract was meant to indemnify against an indemnitee's own negligence."

Here we have no doubt. The words "save harmless lessor from all claims * * * asserted by any * * * customers or invitees of the lessee" are free of ambiguity and clearly include Franklin's claim. Fosson v. Ashland Oil & Refining Co. supra; Epley v. S. Patti Construction Co. (DCND Iowa 1964) 228 F.Supp. 1.

The judgment is affirmed.

All concur, except MONTGOMERY and

EDWARD P. HILL, JJ., who dissent.

DISSENTING OPINION

EDWARD P. HILL, Judge.

The stairway on which Mr. Franklin fell was well lighted. The steps were not steep; they were wide; and they were not slick.

Appellee says he does not know what caused him to fall. Certainly there was nothing about the stairway that caused his fall. Therefore, it must be assumed he was guilty of contributory negligence

True, there was a violation of a city ordinance requiring guardrails, but the failure to have guardrails was not the proximate cause or a contributing factor in the accident.

I would follow the rule announced in Brown Hotel v. Levitt, 306 Ky. 804, 209 S.W.2d 70, which was decided on January 23, 1948, and a later case than Greyhound Terminal of Louisville v. Thomas, 307 Ky. 44, 209 S.W.2d 478, decided November 18, 1947, and hold that appellee was guilty of contributory negligence as a matter of law.

MONTGOMERY, J., joins in this dissent.