### Nash v. Searcy.

(Decided Nov. 9, 1934.)

JOS. P. GOODENOUGH for appellant.

ODIS W. BERTELSMAN for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellant and defendant below, W. A. Nash, owns a six-story business building in Covington, Ky.,

the different floors of which, at the time of the happening here involved, were rented to various tenants, except the fifth which was occupied by defendant as a tailoring establishment; while the sixth one was occupied by a tenant, Martin Kreis, who was engaged in the manufacturing of men's coats for the completed suits made by defendant in his business conducted on the fifth floor. However, Kreis, the sixth floor tenant, conducted his business entirely independently from that of defendant on the floor immediately below, the latter having no control over the making of the coats made on the sixth floor, except to see that it was done according to contract. Kreis employed in his department on the sixth floor from forty to fifty women and girls in the making of coats for defendant under his contract with the latter, among whom was the appellee and plaintiff below, Alma Searcy, who was about nineteen years of age. She was married at the time, but her husband had separated from her and she was first employed by Kreis between the 1st and 15th of March, 1932.

On the 14th day of June of that year, and about the hour of 11:45 a. m., she was preparing to eat her lunch that she had brought from her home, when she started down the stairway from the sixth floor to the fifth floor from whence she would take an elevator to the first floor of the building; and, when on either the second or third step from the top of the stairway, she fell to the bottom of it and sustained injuries consisting of bruises on various parts of her body and culminating, as she claimed, in a miscarriage that happened about one month thereafter. She later, by her next friend, filed this action in the Kenton circuit court against defendant to recover damages that she sustained, upon the ground that the stairway down which she fell was under his charge and control as owner of the building, and that it was his duty to keep it in reasonable repair for the safety of those having the right to use it, including herself, and that he had failed to perform that duty. In describing defendant's derelictions she mentioned only these: "That defendant permitted the steps to become uneven and out of alinement and permitted oil and grease to accumulate thereon; and failed to have sufficient light in said stairway necessary for the use of same." Defendant's answer denied the material averments of the petition and contained a plea of contributory negligence, which was denied by reply, and upon trial the

jury, under the instructions given by the court, returned a verdict in favor of the plaintiff for the sum of $1,500, upon which judgment was rendered. Defendant's motion for a new trial having been overruled, he prosecutes this appeal, relying through his counsel upon a number of grounds as reversible errors; but our careful examination of the record convinces us that only three of them are sufficiently meritorious to require our consideration, and which are: (1) That the court erred in overruling defendant's motion for a peremptory instruction in his favor; (2) error of the court in overruling defendant's motion made three times during the trial for a view of the premises by the jury; and (3) error in some of the instructions submitted to the jury, each of which will be considered and determined in the order named.

1. The stairway down which plaintiff fell was not rented by defendant to any of the tenants occupying any portion of his building, and which had the effect to reserve it under his control so as to burden him with the duty to maintain it in a reasonably safe condition for use by those having the right to do so, among whom was plaintiff as an employee of the lessee, Martin Kreis. That the duty mentioned is so imposed upon a landlord in such circumstances is clearly recognized as a firmly settled principle in the law cannot be gainsaid. It is so much so that we deem it unnecessary to encumber this opinion with but a limited number of adjudged cases and texts so declaring. Among the latter is the extensive annotation in 25 A. L. R., beginning on page 1273, and extending to and including page 1340. At the threshold of that annotation the general principle is stated to be, "that the owner of a building who leases it to different tenants, and expressly or impliedly reserves portions thereof, such as halls, stairways, porches, walks, etc., for the use in common of different tenants, is liable for any personal injury to a tenant, or a person in privity with a tenant, due to defects in the portion of the leased premises of which the landlord so retains control, provided the defect is ascribable to the negligence of the landlord, and the tenant or person injured is not guilty of contributory negligence."

To the same effect is the text in Tiffany on Landlord and Tenant, vol. 1, secs. 628-632, both inclusive, and sec. 664. The principle has been approved and applied by us in an unbroken line of cases, some of

which are: Mills' Administrator v. Cavanaugh, 94 S. W. 651, 29 Ky Law Rep. 685; Dodson v. Herndon, 147 Ky. 181, 143 S. W. 1011; Home Realty Co. v. Carius, 189 Ky. 228, 224 S. W. 751; Richmond v. Standard Elkhorn Coal Co., 222 Ky. 150, 300 S. W. 359, 58 A. L. R. 1423; Consolidation Coal Co. v. Zarvis, 222 Ky. 238, 300 S. W. 615. 58 A. L. R. 1430; Black Star Coal Co. v. Garland, 228 Ky 473, 15 S. W. (2d) 265, and the same case on second appeal in 235 Ky. 204, 30 S. W. (2d) 900. Many others are cited in those opinions, and which establish our adoption of the legal principle as so declared by the cited texts.

However, our investigation of the question has revealed some confusion in the statements of the principle of law under which the landlord may be so held liable because of the failure to clearly point out the basic grounds therefor. As an illustration, the investigator will constantly come upon an expression saying that "the landlord is under a duty to maintain the safety of such portions of the entire rented premises as he retains under his control and not specifically rented to any particular tenant," and that as a consequence thereof, "he must exercise ordinary care to maintain them in reasonably safe condition." Such expressions, we repeat, are somewhat confusing, in that they tend to convey the idea that the landlord is under an absolute duty to maintain in safe condition the premises producing the injury to plaintiff, as though it was contractual, and at the same time excuses him from its performance if he has exercised ordinary care in the premises, and which involves notice to him of the defect either actual or constructive, the latter of which would be imputed if the defects had existed for a sufficient time for him to discover them in the exercise of ordinary care. Such apparent confusion is due to the fact, as we conceive, of a failure to correctly define the duty imposed upon the landlord, and which is, that under the circumstances indicated, with reference to such portions of his premises, he is under the duty to exercise ordinary care to maintain as being under his charge, and which his tenants have the liberty to use as necessary appurtenances to their rented portions. That duty is therefore performed when the landlord exercised the proper care to do so. His duties in the premises require at his hands the exercise of such care in the actual construction or making of repairs to such re-

served portions of his leased building as well as to maintain them in a reasonably safe condition. See cases supra and also that of R. C. H. Covington Co. v. Masonic Temple Co., 176 Ky. 729, 197 S. W. 420, L. R. A. 1918A, 436.

Differently stated, the liability of the landlord in such cases is one sounding in tort and rests upon negligence and does not arise from the breach of any contract by him. Having said this much by way of preface, we will now take up ground (1) for determination.

No witness at the trial gave evidence as to any defective condition of the stairway at the time plaintiff sustained her fall, except herself and her father who saw it some two or three days thereafter. It was uncontradictedly proven that there were as many as twenty steps in the stairway and that it was as much as or more than six feet wide with hard pine treads. Also, according to a number of witnesses testifying for defendant, in addition to his own testimony, they were in practically as good condition as when the stairway was first constructed. Plaintiff testified at the trial, and she also gave her deposition taken on cross-examination beforehand. In the latter, she stated that she started to fall when she placed her foot on the second step from the top; that the steps were rough and greasy; that her left foot slipped and that the heel of her shoe "rubbed against the edge of the step," adding, however, that "I do not believe it was enough to throw me." She stated furthermore that she did not step upon any substance temporarily upon the stairway, such as a banana or apple peel or other substance, so as to cause her foot to slip as she described it. There was a bannister on the right-hand side of the steps going down, but which she did not employ in making her descent, but she stated that after she started to fall she attempted to grab it but missed. She also said that there was no light shining directly on the steps of the stairway, but the proof overwhelmingly shows, and she practically admitted, that there were lights at both the head and foot of the stairway slightly to one side, yet not far enough removed to prevent them from shining on it. There was also a window at the head of the stairway opening through the outside wall of the building, and which was 3½ feet wide and 8½ feet high.

In her testimony given orally at the trial she stated

that when she emerged from the sewing room where she worked, and which was extensively lighted, the hallway that she first entered was darker than the room from whence she had come, as was also true of the stairway, and in describing the condition of the steps she said: "Well the steps looked to me like they had that oil that they put on the floors in the sewing room to keep down the dust, what it looked like to me." She later stated, however, that what she thought was oil was not fresh, or in a liquid condition, but only presented the appearance of a greasy surface of more or less long standing, and forming nothing more than a stain which she inferred was made by oil brought from the sewing room on the shoes of those who used the steps, including all of the employees on the sixth floor, and which floor had been previously oiled for the purpose of settling accumulating dust thereon.

Being pressed for a more definite description of the steps, she stated that, "They wasn't even, they were uneven," and that "the boards were not smooth like boards should be on steps," and that "as I went down the steps I stepped on something slippery," which caused her to fall. Her father, who examined the steps some two days thereafter, testified in substance that they were rough in places and were to some extent what he called "uneven," but gave no explanation of that term. The testimony of defendant and a great number of witnesses he introduced, consisting of occupants working on the sixth floor including the lessee thereof, contradicted plaintiff and her father as to the indefinitely described defects that they gave concerning the condition of the steps. However, in determining this ground, we are confined to weighing only the testimony of plaintiff and that of her father and to ascertain therefrom whether or not it established a dangerous and unsafe condition of the stairway down which plaintiff fell.

It will be remembered that the authorities, supra, only require the landlord to maintain such parts of his building in "a reasonably safe condition for use," and which negatives the idea that they must be absolutely and perfectly safe. In other words, the law does not require the landlord in such cases to maintain such parts of his building in the same perfect condition of repair as when first constructed, and when they were completely new. On the contrary, it recognizes that

every day's use of such parts of the rented building produces some disrepair and that the aggregate of it in the course of time may result in some change or alteration different from that existing at the time the contrivance was first constructed, but which non-repair may still be within the domain of what is considered "reasonably safe," and as not having reached the point of producing a "dangerous condition." It is our conception of the testimony of plaintiff and that of her father (leaving out of consideration that given by defendant and his witnesses) that she failed to prove any actionable dangerous condition of the stairway, or the step producing her fall, as a proximate cause thereof; but at best she only showed a slight reduction from the state of perfect condition of some of the steps when first built, but falling short of rendering them dangerous or unsafe for use. It will be observed that neither she nor her father described the roughness to which they referred, nor the unevenness, nor did either of them attempt to show that either of those indefinite conditions applied to the particular step from which she started to fall, and upon which her foot slipped. Both her testimony and that of her father is not only indefinite and vague, but it is also largely expressive of conclusions on the part of the witnesses so testifying.

It was incumbent on her to not only prove facts essential to her right of recovery and which in this case were, that defendant had negligently permitted the steps to become in a dangerous state of nonrepair, describing it, and that the described defects were such as were reasonably calculated to produce that condition, and were the proximate cause of her fall whereby she sustained her injuries. Her testimony and that of her father fell far short of that and left it for the jury to speculate and surmise that defendant in some way had neglected to fulfill his duty in the premises. The same is also true with reference to the oil which she testified was on the steps, since, as we have indicated, it was only such as was brought there in the manner we have pointed out and was then dry, leaving only a stain with nothing to show that such condition was unsafe for use or dangerous in any respect. Such condition of the testimony could easily have been avoided by the witnesses telling the extent of the roughness and unevenness to which they testified, and pointing out the steps that were in that condition, and most especially should

that have been done with reference to the step upon which plaintiff started to fall, since if it was in a reasonably safe condition and free from the indefinitely described defects to which she testified, then the condition of the others below it was immaterial. No one can read this record without coming to the conclusion that plaintiff thoughtlessly started to descend the stairway without holding to the rail down its right side which had been constructed for no other purpose than the safety of those who had occasion to use it, and that she no doubt thoughtlessly placed her heel too near the outer edge of the step whereby she became overbalanced and fell. But, however that may be, of one thing we are sure, and which is, that she failed to describe a dangerous condition of the steps or to show that they were not in a reasonably safe condition, and for which reason we conclude that inasmuch as the law does not require in cases of this kind perfect or guaranteed safety, she failed to prove the cause of action alleged in her petition, and for which reason the court erred in not sustaining defendant's motion for a peremptory instruction in his favor.

2. Defendant at the beginning of the trial asked the court to permit the jury to first view the stairway, so that they might be informed as to the conditions, as well as be better prepared to understand the testimony as it might be introduced. That motion was overruled, but it was renewed at the close of the plaintiff's testimony and again overruled. It was again made at the close of all the testimony with like result, each time the defendant reserving exceptions. Section 318 of the Civil Code of Practice authorizes the trial court to permit the jury to view premises which are the subject-matter of litigation, and which is but declaratory of the common-law rule on that subject. It has never been held to be mandatory on the part of the court, but only as authorizing a procedure ''largely in the discretion of the trial court * * * and its action will not be disturbed unless the discretion has been abused.'' See note 1 to the section of the Code, supra, wherein the cases of Central Kentucky Asylum v. Haun, 50 S. W. 978, 21 Ky. Law Rep. 22; Todd v. Cooke, 64 S. W. 908, 23 Ky. Law Rep. 1528; Valley Turnpike & Gravel-Road Co. v. Lyons, 58 S. W. 502, 22 Ky. Law Rep. 646; Cohankus Manufacturing Co. v. Rogers' Guardian, 96 S. W. 437, 29 Ky. Law Rep. 748; City of Louisville v. Caron, 90

S. W. 604, 28 Ky. Law Rep. 844; Crane v. T. J. Congleton & Bro. (Ky.) 116 S. W. 341; and Majestic Theater Co. v. Lutz, 210 Ky. 92, 275 S. W. 16, are cited declaring the effect of the section as indicated.

The text in 20 R. C. L. 1016, sec. 13, is to the same effect as the cited domestic opinions, and like them it states that the discretion of the court in overruling the motion for a view by the jury of the involved premises will rarely be disturbed. However, it, as well as the text in 64 C. J., pages 87 and 88, sec. 90, and in volume 4 of the same work, page 829, sec. 2910, and also our domestic opinions, supra, recognize the fact that under some conditions and circumstances it would be prejudicial error for the court to deny a view of the premises by the jury when timely application is made therefor by the losing litigant. It occurs to us that if there ever was a case where the broad discretion lodged with the court was abused, it is this one, since the proof was overwhelming and uncontradicted that at the time of the trial the steps were in the exact condition that they were in at the time plaintiff sustained her accident. Every one connected with the premises, both landlord and tenant, as well as employees of both, testified that nothing had been done to the steps since that time and that they were in the identical condition at the time the view was asked as they were at the time plaintiff was injured. The building was only some two or three blocks from the courthouse and it would have required but slight delay in the trial for the view to be made, and which would have been most elucidating to the jury as to the actual condition of the steps, and especially so when plaintiff's proof was so meager on that point. We, therefore, conclude that the court abused a sound discretion in overruling defendant's motion for the jury to view the premises, and that, as a consequence, this ground is also well taken.

3. It will be remembered that plaintiff specified the derelictions of defendant by stating that he had negligently permitted the steps to become (a) uneven; (b) out of alignment; and (c) covered with grease. The instruction submitting plaintiff's case was not confined to them, but was general in its terms, and authorized a verdict against defendant if he "failed to so maintain said steps and stairway (in a reasonably safe condition for the purpose for which they were used) and that as a result of such failure, if any there was, the said steps

and stairway became unsafe or dangerous," etc. That instruction authorized a recovery for anything that might have happened to the steps though not embraced by any of the three complaints which plaintiff relied on in her petition, and to that extent it was erroneous. We find no objection to the other instructions, but for the error in instruction A, above referred to, this ground also is pro tanto sustained. All other questions are reserved.

Wherefore, for the reasons stated the judgment is reversed, with directions to set it aside and for proceedings consistent with this opinion.