**PHELPS ROOFING COMPANY, Incorporated, Appellant,**

v.

**Joseph E. JOHNSON, III, Adm'r of the Estate of Mary Elizabeth English, Deceased, Appellee.**

Court of Appeals of Kentucky.

May 31, 1963.

**322**

John L. Davis, Stoll, Keenon & Park, Lexington, for appellant.

Owen S. Lee, Strother Kiser, Lexington, for appellee.

PALMORE, Judge.

Mary Elizabeth English, a 27-year old colored girl, was killed when she fell to the basement from the second story of an apartment or tenement house wherein she was a social guest at a late-at-night drinking party with some of the tenants of the house. Ostensibly in search of a bathroom in the apartment of L. C. Sanders, one of the participants in the party, she mistakenly went out a door connecting one of Sanders' two rooms with a rear hall and stairway that was in process of being dismantled and replaced by the landlords' contractor. The stairs and railings had been completely removed, and the flooring had been taken up except for the joists, which extended outward a short distance from the wall separating the hall from Sanders' apartment. Two doors had been laid flat on the protruding floor joists, but were not nailed or otherwise secured. Mary Elizabeth evidently had not visited the premises before and was not aware of the condition. Emerging from the light of Sanders' room into the unlighted hallway, she stepped on the door or doors lying on the floor joists, lost her balance, and plummeted down the open stair well to her death a story and a half below.

The contractor appeals from a $20,000 judgment entered on a jury verdict in a wrongful death action brought by the administrator of Mary Elizabeth's estate.

There can be little doubt from the evidence in this case that immediately prior to the commencement of repairs the rear hallway was a part of the premises not within the control of any tenant, but which the tenant Sanders and his guests were entitled to use as appurtenant to the part leased to him. If this continued to be the case while the repairs were in progress, the landlords and their contractor were liable under the principles stated in §§ 360 and 383, Restatement of Torts. Cf. Dixon v. Wootton, 307 Ky. 338, 210 S.W.2d 967 (1948). There was, however, an issue of fact as to whether, with the beginning of the repair work, there was a change in the status of the rear hallway, and a consideration of the arguments relative to the instructions must focus on the narrower question of just what was necessary, as against the lessee's social guest without actual notice, in order to effect such a change.

Traditionally, the lessor's duty to maintain in a safe condition those parts of the premises which he retains in his own control but intends to be used by his tenants and their invitees and licensees is said to

rest on the theory of invitation, express or implied in fact. Cf. Tiffany on Landlord and Tenant, § 89a. Hence if the landlord changes his mind and tells the tenant he can no longer use a particular area outside the leased part it would follow logically that the landlord's duty is at an end. However, it is well settled that implied invitation is not the only premise on which the lessor's duty is founded. His responsibility arises principally from the law of negligence. Home Realty Co. v. Carius, 189 Ky. 228, 224 S.W. 751, 752 (1920); Nash v. Searcy, 256 Ky. 234, 75 S.W.2d 1052, 1054 (1934).

■ Instruction No. "X" offered by defendants submitted the proposition that if in fact the place where the decedent fell was not then intended for use as an entrance, exit or passageway there was no liability on their part. The court instead gave Instruction No. 7, absolving them on this theory only if the decedent had notice that such a use was not intended, and Instruction No. 8, likewise denying recovery if defendants had in fact barred and nailed the door (as they testified they did) in a manner sufficient to give such notice, and if the doors had been thereafter unfastened without their knowledge. Within the context of the evidence presented, the latter two instructions correctly stated the law. Proffered instruction 'X' was improper, because under it the duty of the landlords and their contractor would have depended entirely upon a subjective state of mind rather than the objective standard of ordinary care.

■ Being contiguous both to the front hall and to Sanders' apartment, and connected to each by a door, the rear passageway was a place a reasonable man should have expected people lawfully on the premises to use unless forewarned. From a practical standpoint, defendants admitted this by testifying that they did in fact bar or nail the two doors shut. It is our opinion that when the flooring was taken up and the stairs removed, creating an extreme hazard to any person attempting a passage (particularly at night), it was incumbent on the defendants as a matter of law either to bar the doors or to put up warning signs so placed and lighted as to furnish reasonable notice of the danger. This was the substantial effect of Instruction No. 1, and we think it was correct. When certain acts and omissions constitute negligence as a matter of law the plaintiff is entitled to instructions that say so. Actually, Instruction No. 1 in this case could have been simplified almost to the point of saying that if the contractor failed to nail up or bar the doors the plaintiff was entitled to recover unless his decedent were found contributorily negligent. Limiting an instruction to the salient facts in issue, on which the conclusion of liability or non-liability necessarily depends, does not violate the rule against giving "undue prominence to certain facts and issues." (See, for example, discussion in Barker v. Sanders, Ky.1961, 347 S.W.2d 529, 531, suggesting that in an intersection case instructions may and often should be simplified to the point of submitting the case on the precise and certain issue of whether a party had the green light.)

■ The police officer called to the scene very shortly after the fatal accident in this case found both doors to the back hallway unsecured and saw no indication that they had been barred or nailed shut. From the testimony of Ella Bybee and Richard Price the jury had sufficient basis to infer that the situation had been that way for a week or so beforehand and, indeed, that the doors never had been barred at all. The jury was not bound to believe the defense testimony in this respect, even though it may technically have been "uncontroverted." That the door leading from the front hall to the back hall was unsecured (as the jury was authorized to believe), plus the fact that two doors had been laid on the floor joists to provide walking space, justified the further inference that the landlords contemplated a continued use of the passageway for access to Sanders'

kitchen and apartment. Again, the jury was not obliged to believe that the doors had been laid down for the benefit of the carpenters. We find no tenable basis on which the trial court could have directed a verdict.

■ There was evidence that Mary Elizabeth English had been drinking, but none that she was drunk or that her faculties were impaired. We cannot say as a matter of law that she was contributorily negligent in stepping through the door into the comparative darkness of the hallway without waiting for her eyes to adjust to the difference. Pease v. Nichols, Ky., 316 S.W.2d 849 (1958), in which the plaintiff-tenant was well aware of the danger before she started down the stairs, is not analogous.

■ At the time of her death Mary Elizabeth was in good health and, though encumbered by four illegitimate children, did day work as a maid for different people and worked seasonally at a tobacco factory. Average wages paid for household servants in the community were $30 per week. Tobacco factory work pays $1.15 per hour, or $46 per 40-hour week. It was stipulated that Mary Elizabeth's life expectancy was 36.41 years. The award of $20,-000 may have been liberal, but it does not strike us at first blush, or even upon further cogitation, as excessive.

■ Defendants objected to the reading of the deposition of Richard Price, a vital witness who was not present in person at the trial. CR 26.04(3) authorizes the use of a deposition "if the court finds" that the witness is absent from the state. It is our opinion that the trial court should be allowed a reasonable discretion in determining whether the condition has been met. A subpoena for the witness Price to appear at the trial on December 6, 1960, had been issued on November 30, 1960, and returned "not found" on December 1, 1960. Counsel for plaintiff stated to the court that he had received a collect long distance call

from Florida the night before the trial and recognized Price's voice talking to the operator, though he did not accept the call. If counsel had put this information in the form of an affidavit, we think it would be most unreasonable to say it could not have supported a finding by the trial court that the witness was out of the state. Had counsel for appellant demanded an affidavit, no doubt it would have been provided. We do not accept the strict rule represented by some of the authorities cited on this question by appellant. We sustain the trial court's discretion.

The judgment is affirmed.