**COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellant,**

**v.**

**Hattie CONLEY, Widow, et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 25, 1964.

Rehearing Denied March 5, 1965.

John B. Breckinridge, Atty. Gen., William A. Lamkin, Jr., Asst. Atty. Gen., Edmond H. Tackett, Jarvis Allen, Pikeville, for appellant.

Earl R. Cooper, Salyersville, for appellees.

PALMORE, Judge.

The Commonwealth appeals from a judgment of the Magoffin Circuit Court awarding the owners $3,500 for the taking of three small strips of their land, totalling .84 acres, incident to the widening of a public road.

The case is invested with some degree of confusion by reason of the circumstance that the parties do not agree as to the boundaries of the road prior to the widening and the trial court evidently did not determine that question. Although the plans were not filed as an exhibit, the testimony indicates that the state claimed an existing right-of-way 30 feet wide and is taking an additional 15 feet on each side. As of the time of the taking the pavement of the road was 16 feet in width, so that the claimed right-of-way extended seven feet to each side. A stone wall on one side of the road was located entirely within this seven-foot margin. A frame store building on the same side stood about two feet from the blacktop and was situated directly over the headwall of a culvert running under the highway. Across the road sat a frame garage structure 2½ feet from the blacktop. All of these, says the state, were on its right-of-way. However, the owners had never before been requested to move them.

The only evidence tending to establish public ownership was testimony to the effect that the road was built in WPA days and the state had title by prescription. Obviously the two wooden structures were erected after the road was built, as each of them is partially on the shoulder and extends out over the toe of the fill. The stone wall seems to have been erected more or less contemporaneously with the building of the road. But in any event, title by prescription does not ripen overnight, and even if the road was completed first, and even if the public possession could be said to have reached to or beyond the extremities of the fills and headwalls, there is nothing in this record to warrant

a conclusion that a prescriptive title was perfected before the encroaching structures were put up. Under the circumstances it cannot be assumed that they were on the public right-of-way . before the instant taking. .

The two strips on which the wall and buildings were situated were part of a tract of some 20 acres purchased by the owners some time in the 1950's for $6,500. At the time of that purchase there was a 5-room frame dwelling located behind the stone wall we have mentioned. It had burned down before this case arose, but the site, or "house seat," was suitable for rebuilding a residence. According to witnesses for the owners, this was the only valuable part of the whole 20 acres, the rest being hill land and unsuitable for profitable development. The taking of 15 feet beyond the 30-foot right-of-way already claimed by the state will, they say, destroy its value because not enough room will be left against the hill for the location of a home.

Lawrence Hall, husband of one of the owners, testified that he had bought, sold, now owns, and is familiar with the value of real estate, had built two homes himself, and is well acquainted with the property in question. He estimated its value before the taking at $5,500 and after the taking at $2,000 to $2,200.

Wess Rowe, who had lived in the neighborhood all his life and had once lived on this particular property, did not presently own any land but had seen it bought and sold and was of the opinion that the value before was $6,000 and the value after was $2,000. He was an intelligent witness, explaining on cross-examination that the $4,000 loss lay in the homesite. He admitted, however, that he did not know of any comparable sale as high as $4,000 per acre.

Tom Howard also had resided in the vicinage all his life and was the owner of 7 acres of bottom land and 40 acres of hill land bought in 1958, the same year as the taking in this case. He had bought, sold and traded real estate and was familiar with land values. His opinion was that the fair market value of this property was $5,500 or $6,000 before the taking and $1,500 to $2,000 after. He attributed the loss principally to excessive reduction in size of the residential site.

■ Under the principles discussed and approved in Commonwealth, Dept. of Highways v. Tyree, Ky., 365 S.W.2d 472, 477–478 (1963), there can be little question that the opinions of these valuation witnesses were competent and of sufficient probative value to withstand the Commonwealth's motions to strike their testimony.

During the trial, counsel for the Commonwealth moved that the jury be sent to view the property but objected to its being taken by the sheriff, because he was the defendant in another condemnation suit then pending in Magoffin County. Upon the objection's being overruled the Commonwealth moved that its engineer be permitted to go with the jurors to the property. This too was overruled, and prejudicial error is claimed.

KRS 177.087(1) provides that the jury, "on the application of either party, shall be sent by the court, in the charge of the sheriff, to view the land and material." The court sustained the motion for a view and charged the sheriff and his guards as follows:

"You and each of you do solemnly swear that you will take these jurors out to the Hattie Conley property; the sheriff, Mr. Holbrook, will show them where the property is located; he will not point out the boundary or the width of the right-of-way taken. The jury will arrive at those things from the evidence and blue prints that is being introduced in court. You will just show where the Hattie Conley property is located and the jury will look it over and you won't talk to any of them about anything connected with

the trial of the case and won't let anybody else talk to them or attempt to talk to them about anything connected with the trial of this case."

■ There is a rebuttable presumption that a sheriff while in custody of a jury on a view performed his duty properly. Southern Ry. Co. in Kentucky v. Alford's Adm'r, 150 Ky. 808, 150 S.W. 985 (1912). It is not suggested that the trial court's admonition was not duly observed. Therefore, had the objection been well taken (which we do not say), still there is no showing of prejudice.

■ As the sheriff knew where the property was, it was not necessary that any of the parties or their representatives go along to point it out. The only function the Commonwealth's engineer could have performed by accompanying the viewing party was to act as a watchdog. Anything he might have done beyond that would certainly have been impermissible. Keeney v. Commonwealth, Dept. of Highways, Ky., 345 S.W.2d 481 (1961). We do not believe the trial court abused its discretion in refusing to allow a representative of one of the parties to attend the view. Moreover, again in view of the presumption to which we have alluded, there is no indication of actual prejudice.

In the county court proceedings the commissioners appointed to fix the value of the property taken and the amount of re-

sulting damages (KRS 177.083) reported these items substantially as follows:

| Land | $1070. |
| Moving buildings | |
| 1 Store building | 1200. |
| 1 Garage | 1200. |
| 1 apple tree, 2 flower shrubs | 30. |
| Total | $3500. |

The owners did not appeal from the county court award reflecting this report. On the theory that the last three items shown on the commissioners' report are not allowable under Commonwealth, Dept. of Highways v. Sherrod, Ky., 367 S.W.2d 844 (1963), the Commonwealth takes the position that only the value of the land taken was properly in issue on the appeal to circuit court and, since the owners did not appeal, their recovery should have been limited to $1070.

■ This case was tried in 1962. The Sherrod opinion,[1] announced in 1963, does not apply retrospectively to the separate assessment of "taking" and "resulting" damages. Even if it did, we do not believe the improper manner in which the county court commissioners chose to fix and itemize the damages made it incumbent on the landowners, who evidently were satisfied, to appeal in order to save their right to a proper award in the circuit court, so long as it did not exceed $3,500.

The judgment is affirmed.

1. Which had the practical effect of modifying the procedural aspect of KRS 177.083.