Gladys A. JUETT, Administratrix of Estate of C. D. Juett, Deceased, et al., Appellants,

v.

Louise CALHOUN et al., Appellees.

Court of Appeals of Kentucky.

May 6, 1966.

As Modified on Denial of Rehearing Sept. 16, 1966.

Charles Landrum, Jr., Denney, Landrum, White & Patterson, Lexington, R. Russell Grant, Winchester, for appellants.

James Steven Hogg, Jackson, S. Russell Smith, Louisville, for appellees.

DAVIS, Commissioner.

A jury awarded appellees $15,000 as damages to two residence buildings allegedly caused by blasting done by Juett Construction Company (appellants) incident to construction of a public highway in Breathitt County. Appellants seek to upset the ensuing judgment and advance numerous assignments of error which we shall discuss in the order presented without a preliminary statement of them.

The first charged error relates to an alleged irregularity in the selection of the jury panel for the term at which the case was tried. The record is quite meager on this point. It is shown that on August 25, 1964, when the case came on for trial, appellants filed a motion, verified by one of counsel for appellants, asserting that at the preceding term of the court the presiding judge of the court removed each name of the prospective panel from the drum and "called the name out to the Clerk, which Clerk wrote the names down on a list; that the Circuit Judge did not himself make up the jury list." The motion sought "to set aside the jury panel" for this alleged violation of KRS 29.135. There was no response or counter-affidavit to the verified motion, but an order merely recites that the motion came on to be heard, " * * * and the Court being advised it is ordered and adjudged that said motion be * * * overruled * * *." As noted in Price v. Commonwealth, Ky., 366 S.W.2d 725, 726:

"While our opinions achieve unanimity in condemning even the slightest irregularity in the selection of a jury, judgments have not always been reversed because of the deviations."

Under an earlier, but similar statute, this court declined to reverse in a situation almost identical with the one at bar. See Central Kentucky Asylum for Insane v. Hauns, 50 S.W. 978, 21 Ky.Law Rep. 22. In that case the court stressed the fact that no showing had been made that the deputy clerk had divulged the information concerning the names of the jurors. The statute's proviso for drawing the names in open court by the presiding judge is calculated to dispel any aura of "star chamber" procedure. The salutary purpose of the law is to assure that jurors are selected honestly, impartially and without even a

suspicion of corruption. In the state of this record we are not advised whether the "calling out" of the names by the judge was audible to others in open court. We will not indulge the presumption that the information was "leaked." We condemn this procedure, as it was condemned in Kitchen v. Commonwealth, 275 Ky. 564, 122 S.W.2d 121, but here as there, we do not reverse on that point. Cf. Com., Dept. of Highways v. Garland, Ky., 394 S.W.2d 450, 452, wherein this court reiterated its position that the selection of jurors must be conducted in such manner as to be above suspicion.

The next charge of error relates to the court's permitting the reading at trial of the deposition of a witness. CR 26.04 prescribes the conditions for use of depositions upon trials. Among other things, CR 26.04(3) provides that the deposition of a witness may be used if the court finds that the witness is at a greater distance than 100 miles from the place where the court sits in which the action is pending. The deposition had been taken shortly before the trial, upon proper notice. The witness then was working at Bardstown, more than 100 miles from Jackson, the situs of the Breathitt Circuit Court. We conclude that it was proper to permit the reading of the deposition in the absence of some showing that the witness was available. Phelps Roofing Company v. Johnson, Ky., 368 S.W.2d 320, is reflective of this court's attitude that a reasonable interpretation is to be placed upon the rule. We think the trial court acted reasonably and properly in this respect.

Appellants contend that the court committed error in denying their motion for a more definite statement. CR 12.05. The motion was made about eleven months after appellants had taken the depositions of the appellees upon discovery. One of the appellees testified upon that deposition that the blasting complained of occurred in the "latter part of May or first part of June" in 1960. The purpose of the motion

was to require appellees to fix with particularity the date or dates of the blasting. Appellants' brief presents their contention thus:

"Without knowing the specific date, or even the month, during which the alleged damage took place, the appellant was unable to ascertain from its records the exact amount of explosives that were used on those dates or how the explosives were placed or set off, so as to prepare a reasonable and suitable defense."

Appellants already knew that the pertinent period was narrowed to the "latter part of May or first part of June." Moreover, one of the appellants testified that he had no idea where any blasting records of the company could be located. In these circumstances we think there was no prejudice to appellants, particularly since they did present evidence as to the manner of the blasting. It would have been better practice to have sustained the motion for a more definite statement in the absence of a showing that appellees, for acceptable reason, were unable to furnish a more definite statement.

In what is denominated as the fourth assignment of error the appellants enumerate what they describe as "numerous and flagrant improper remarks by opposing counsel and remarks by the court." In this same residuum type "point" we find three other charges of trial errors. We point out that it is better practice and assists in more orderly disposition if each point of claimed error is catalogued and discussed in a separately enumerated portion of the brief. RCA 1.210.

We turn first to the alleged improper remarks by counsel. In the opening statement counsel for appellees said, in part, "But, at the same time, I want you to be fair to the plaintiffs who built their new house down there. Who begged, cried and plead with the construction workers to reduce the size of the charges and spare

their house. But they just ignored them and negligently and wilfully set off these explosions." At this point counsel for appellants objected, and the objection was overruled. There was no request for any admonition or other curative action from the trial judge.

Complaint is made also about some of the remarks in the closing argument of counsel for appellees—and indeed there is complaint about a comment made by counsel and the court's reply to it during the trial. It would unduly lengthen this opinion to undertake a detailed statement and analysis of each of these occurrences. It is enough to observe that for the most part none of them was objected to, and it is our view that none of them separately, nor all of them in the aggregate, could be regarded as prejudicial. The glowing sparks which shower from the anvil as the smith strikes the heated metal are colorful—perhaps awesome to the uninitiated—but they are short-lived and of little significance. In like manner, the sparks which are created when justice is being hammered out upon the anvil of a jury trial, in the form of barbs and gibes between counsel, usually last no longer and have no more effect than the actual sparks from a real anvil. There was nothing in the remarks of counsel—nor in the judge's comment—which could have made any appreciable difference in the trial of the case. We find no merit in these points.

■ At one point in the cross-examination of appellant Gene Juett, he was asked to relate what Mrs. Calhoun (appellee) had told him, and whether she was "complaining." In response to the question as to whether she was "complaining" Juett replied:

"She was complaining about shaking the house and I told her I would report it to the insurance company and I did."

Then counsel for appellants moved to set aside the swearing of the jury and for a continuance, but the motion was denied; no further action by the court was requested. Reliance is had upon Triplett v. Napier, Ky., 286 S.W.2d 87, on the theory that it was the persistent and intended purpose of counsel for appellees to elicit the insurance coverage from the witness. The record does not warrant the argument. Juett made the answer voluntarily and without being plied with questions looking toward such an answer. The answer was not responsive to the question. Appellants may not voluntarily interject the matter of insurance coverage and then complain that they have been prejudiced by it.

■ We agree that error was committed in the matter of conducting the jury to and from a view of the premises to inspect the claimed damages. The controlling statute is KRS 29.301 which directs the trial court to have the jury viewing real property " * * * conducted in a body, under the charge of an officer, to the place, which shall be shown to them by some person appointed by the court for that purpose. While the jury are thus absent no person, other than the person so appointed, shall speak to them on any subject connected with the trial." In this case the court placed the jury in charge of a sheriff, but permitted one lawyer and one litigant from each side to go along. The transportation of the jury to and from the scene was accomplished by means of three or four cars. Obviously the sheriff could be in one car only, and this alone would present no problem; however, when portions of the jury are permitted to travel to and from the scene in a car, without an officer, but with a lawyer or litigant, a different problem is presented. Once again we are confronted with the "appearance of evil" principle. Great care must be taken to assure the litigants—and the public generally—that jury trials are conducted fairly and free from opportunities for contamination. We do not suggest that anything improper was said or done by any lawyer or litigant—but the truth is—if there had been, it would be substantially impossible to prove. Compare Commonwealth, Dept.

of Highways v. Garland, Ky., 394 S.W.2d 450. It is our view that the circumstances at bar distinguished this case from Henderson & Corydon Gravel-Road Co. v. Cosby, 103 Ky. 182, 44 S.W. 639; Nash v. Searcy, 256 Ky. 234, 75 S.W.2d 1052; Louisville & Jefferson County Metropolitan Sewer District v. Kirk, Ky., 390 S.W.2d 182; Sims Motor Transportation Lines, Inc., v. Foster, Ky., 293 S.W.2d 226; Commonwealth, Dept. of Highways v. Clarke, Ky., 340 S.W. 2d 442; Commonwealth, Dept. of Highways v. Conley, Ky., 386 S.W.2d 750. In these cases the "appearance of evil" as a denigrating impact upon the jury system did not reach the degree of its presence here.

■ Coupled with this improper procedure in protecting the integrity of the jury during the view is another claim of error which has merit. Counsel for appellants called to the court's attention that certain cracks and breaks in the walls of one of the buildings had been prominently identified by chalk markings at the time the jury viewed the premises. That chalk marks were there was admitted by counsel for appellees, but it was asserted that appellants' counsel had known about it in advance. However, appellants' counsel denied such knowledge, and there was no formal or verified statement that he did possess the advance knowledge. The cited statute directs that no person shall "speak" to the jury about any point in litigation. While drawing a chalk line may not be to "speak," we think it is clear that the chalk markings themselves did "speak" in the sense that they conveyed a specific message to the jury in connection with a sensitive and vital portion of the lawsuit. The jury could well have supposed, in the absence of some explanation about the chalk marks, that the marks were sanctioned by the court and admitted or approved by appellants. In our view this was equivalent to permitting one of the appellees to point out the matters of which they complained. Cf. Barnett v. Commonwealth, Ky., 403 S.W.2d

40, 45. It is significant that there was material contrariety in evidence as to the nature and extent of the cracks in the building. The chalk marks may well have drawn the attention of the jury to matters not otherwise discernible. This circumstance distinguishes the present case from Turner v. Shropshire, 285 Ky. 256, 147 S. W.2d 388; Davidson v. Moore, Ky., 340 S.W.2d 227, and Martin v. Tipton, Ky., 261 S.W.2d 809.

■ Appellants contend that they were entitled to a directed verdict, but we are not so persuaded. Although the appellants presented testimony to the effect that the blasting charges were performed in the manner usual and customary in the circumstances, this alone does not absolve appellants from liability. Appellees presented evidence that the force of the blasts shook the residence buildings in a substantial manner. See Lynn Mining Co. v. Kelly, Ky., 394 S.W.2d 755, in which this court expressly renounced the "negligence" theory of liability in blasting cases by pointed reference to Marlowe Construction Co. v. Jacobs, Ky., 302 S.W.2d 612. River Queen Coal Co. Inc., v. Mencer, Ky., 379 S.W.2d 461, and Security Fire & Indemnity Co. v. Hughes, Ky., 383 S.W.2d 113, furnish ample authority for the submission of the instant case to the jury on the basic question of appellants' liability.

Appellants complain that the measure of damages was improperly submitted. It was, but the appellants did not preserve the error for review. See River Queen Coal Company, Inc., v. Mencer, Ky., 379 S.W.2d 461, in which this court noted that it would have been error to give the measure of damages based on difference in market value, if the jury believed the building could not be repaired, since there was no evidence addressed to that point. The same may be said of this case.

Since we are reversing this case for another trial, we reserve the questions

whether the evidence for appellees possessed sufficient probative value to support the verdict and whether the verdict was excessive.

The judgment is reversed with directions to grant appellants a new trial and for further proceedings consistent with the opinion.