COMMONWEALTH of Kentucky, DEPART-
MENT OF HIGHWAYS, Appellant,

v.

Jennie PITTMAN et al., Appellees.

Court of Appeals of Kentucky.

March 22, 1968.

Robert Matthews, Atty. Gen., H. C. Smith, Sp. Asst. Atty. Gen., Frankfort, John A. Diskin, Newport, John J. Blackburn, Covington, for appellant.

Joseph J. Leary, Frankfort, for appellees.

MILLIKEN, Judge.

This is an appeal by the Department of Highways from a judgment in a highway condemnation proceeding for the procurement of right-of-way for Interstate 71 in Gallatin County.

The property involved is approximately a 396 acre tract, belonging primarily to Jennie Pittman and Anna Clay Steele, which is situated just off State Highway 16 in Gallatin County about thirty miles from Cincinnati. The acreage taken amounted to 19.82 acres but the taking severed 24.45 acres from the main tract on the south side of the property and left 351.73 acres landlocked on the northern portion. Before the taking the tract had been used for general agricultural purposes—raising crops, such as corn and tobacco, and grazing cattle. It contained about 162 acres of tillable soil and a considerable stand of locust trees suitable for conversion into fence posts.

A state maintained blacktop road ran through the southern portion of the prop-

erty and the Pittman farm fronted this road for about 1500 feet. The 24.45 acre tract which was severed by the taking retained its frontage on the blacktop road, but the 351.73 acres north of the condemned strip were rendered inaccessible by any public road or passway. The landlocked tract contained a house, barn, tobacco barn and other outbuildings. The severed tract on the south contained a small frame house, small pond, barn and an old two story brick residence which was of no value. All buildings were in fair to poor condition. The right-of-way taking of 19.82 acres eliminated most of the better crop and pasture land, one large pond, a small pond, and a spring. No improvements were lost. The commissioners appointed by the county court assessed the damage at $36,000.00 and the jury verdict on May 11, 1966, was $40,460.00.

The Commonwealth is claiming that the verdict was excessive, that the qualifications of the witnesses for the landowners were deficient and their valuations baseless and unsubstantiated by fact. The spread in the valuation testimony is as follows:

### "FOR APPELLANT"

|  | T. E. Page | Before Value | After Value | Difference |
|---|---|---|---|---|
| R. F. Link | 30 | $23,900.00 | $11,300.00 | $12,600.00 |
| R. M. Daniels | 55 | 24,000.00 | 11,400.00 | 12,600.00 |

### "FOR APPELLEES"

|  | T. E. Page | Before Value | After Value | Difference |
|---|---|---|---|---|
| G. E. Holly | 124–25 | $99,000.00 | $38,841.00 | $61,159.00 |
| Kline Shipp | 71–72 | 69,300.00 | 21,800.00 | 47,500.00 |
| S. Maxwell | 109–10 | 69,000.00 to 71,000.00 | 26,271.60 | 45,489.00 |
| B. Hoblitzell | 92 | 100,000.00 | 40,000.00 | 60,000.00 |

We will not discuss whether we think the verdict is excessive because the testimony offered at a retrial may be somewhat different and the qualification of the landowners' witness, George Holly, may be better established. Suffice it to say that the verdict is generous.

The final two points argued by the state concern the landowners' witness George Holly's contact with a member of the jury and the failure of the trial court to instruct on the landowners' alleged right to obtain a private access to the landlocked land.

In the affidavit of a Highway Department employee it is alleged that on May 11, 1966, at about 8:30 a. m., in the first floor corridor of the Gallatin County Courthouse, the landowners' witness, George Holly, made in substance the following remarks to Warren Rider, a juror:

"* * * that this rain was needed. The plant beds were so near the new highway that the dust and so forth from the road was causing them to dry up."

In addition an affidavit of counsel for the Commonwealth alleged that on May 11, 1966, at 8:40 a. m., George Holly also remarked to the juror Warren Rider:

"I have made arrangements and have got a tractor and a wagon to have the jury taken to visit the farm. I wanted to drive you all around myself but they wouldn't let me."

It is argued by the Commonwealth that these remarks by Holly were intended to have an ingratiating effect on the juror, Rider, so that he would be prejudicially in-

fluenced in favor of the landowners. The Commonwealth contends that such misconduct is grounds for a new trial and that the circuit court committed reversible error in overruling the Commonwealth's motion on this issue.

The general rule on this topic is stated in 39 Am.Jur. 109 New Trial, Section 95:

"An impartial jury, selected and kept free from all outside or improper influences has always been regarded as necessary to a fair and impartial trial, and anything not legitimately arising out of the trial of the case which tends to destroy the impartiality of the juror should be discountenanced."

Where there is no evidence showing the substance of the communication between a witness and a juror to be prejudicial we will not find misconduct. Pillsbury-Ballard, Div. of Pillsbury Mills, Inc. v. Scott, Ky., 283 S.W.2d 387 (1955). In the cited case a juryman ate lunch with a witness and the father of the plaintiff, and we concluded the trial court's refusal to find a sinister significance to this meeting in a public restaurant in the absence of even the suggestion of wrongdoing was correct and the motion to discharge the jury was properly overruled. In Potts v. Krey, Ky., 362 S.W.2d 726 (1962), where, during a recess, as one of the jurors was leaving the courtroom, the plaintiff's mother called the juror over to the plaintiff's counsel table and asked him to tell her daughter, who was out in a hall with the injured plaintiff, to bring the plaintiff into the courtroom, and the juror did so, we held such casual contact did not constitute prejudicial misconduct. In Merrell v. Ball, Ky., 379 S.W.2d 465 (1964), where a juror, during a trial, talked with a witness for one of the parties and the substance of their conversation was that the witness had been a student of the juror's husband at some time in the past, we found no prejudicial error. The rule is quite general that mere communication between witnesses and jurors in a civil action is not ground for the setting aside of the verdict or the granting of a new trial in the absence of a showing that the jurors were influenced by such communication. 52 A.L.R.2d 182, Section 2.

An example of what constitutes prejudicial communication between witness and juror was presented in Raybourn v. Howard, Ky., 307 S.W.2d 206 (1957). There, a juror buttonholed a material witness in private and asked him if one of the drivers in the motor vehicle collision had been drinking. We said:

"It was highly improper, to say the least, for the juror to solicit privately information from this witness about whether Russell Raybourn was drinking. The trial judge should have examined the juror as well as the witness, preferably before counsel, in ascertaining whether the misconduct established was prejudicial."

"Whether a mistrial should be declared upon the showing of misconduct of one of the jurors is generally regarded as a matter within the discretion of the trial court. 53 Am.Jur. Trial, Section 907. However, private communications between jurors and witnesses should not be permitted because the law seeks to insure that jurors be kept free of influences tending to prejudice them for or against either party."

Recent opinions handed down by this court take a firm line in situations involving irregular conduct which affects the jury as a whole, no showing of prejudicial influence being required. In Commonwealth, Department of Highways v. Garland, Ky., 394 S.W.2d 450 (1965), Garland was one of three jury commissioners and the entire array of jurors at the term of court had been selected by the jury commission of which he was a member. An action, to which he was a party came before the court that term and was decided by jurors that Garland had helped select, and although Garland did not make any sinister or improper

use of his position as jury commissioner, we held that:

"The fundamental right to trial before an impartial jury is so basic and crucial in our system of jurisprudence as to demand that no vestige of suspicion be permitted to impugn the impartial method of selection of jurors."

And in Juett v. Calhoun, Ky., 405 S.W.2d 946 (1966), we held the trial court erred in permitting one lawyer and one litigant from each side to go along with the jury which was transported by means of three or four automobiles to the scene of residences allegedly damaged as a result of blasting by defendants in connection with construction, and we said:

"Once again we are confronted with the 'appearance of evil' principle. Great care must be taken to assure the litigants—and the public generally—that jury trials are conducted fairly and free from opportunities for contamination. We do not suggest that anything improper was said or done by any lawyer or litigant—but the truth is—*if* there had been, it would be substantially impossible to prove."

■ These latter cases are based on the appearance of evil principle and have some application here although no evil may have been intended. To communicate at all with a juror in respect to a case being tried creates questions automatically. The conversation between the witness George Holly and the juror, Warren Rider, had a tendency to ingratiate the witness and the landowners' case with the juror and is of especial significance because this is a case where a unanimous jury verdict is required by the Constitution, Section 242. Because of that requirement we will not speculate on the effect of the conversation with the one juror, if any it had, but feel constrained to consider it prejudicial as a matter of law. In our 1942 case of Commonwealth v. Carson, 289 Ky. 799, 160 S.W.2d 166, we did not permit a unanimous verdict by a jury of eleven to stand where the unanimous verdict of a jury of twelve was required by the Constitution.

The remaining contention of the Commonwealth concerns the possible right of the landowners to condemn a passway across private property under KRS 381.580 in order to remove the timber from the 351.73 landlocked acres, and a desired instruction to that effect. The statute is confined to the condemnation of passways for the removal of timber and minerals and does not include the removal of agricultural products such as tobacco which was raised on this tract. The acquisition through condemnation of such a limited passway would not solve the problem confronting the owners of the landlocked tract. It was developed in the testimony that none of the Department's plans and specifications made any provision for future access to the landlocked tract and no witness could estimate the closest point to which access could be obtained to a public highway by negotiation with adjoining owners. Counsel for the Department covered the situation in his final argument, commenting that the landlocked area could be sold to adjoining owners or the landowners could negotiate with the adjoining owners for the purchase of an easement which, counsel admitted, "Of course * * * is going to take some money but it can be done and it has been done time and time again in other situations where a parcel is landlocked."

■ We think that the jury was made cognizant of the effect of the condemnation on the farm—of the difficulty of utilizing the landlocked tract, of the possible means available of gaining access to it and that the acquisition of such a passway would cost money. We think that it would have been improper to instruct the jury to take into consideration the limited usage passway obtainable by condemning a passway under KRS 381.580, or to give any special instruction pertaining to the acquisition of a passway.

The judgment is reversed.

All concur.