COMMONWEALTH of Kentucky, DEPART-
MENT OF HIGHWAYS, Appellant,

v.

Samuel H. PATE et al., Appellees.

Court of Appeals of Kentucky.

May 29, 1970.

John B. Breckinridge, Atty. Gen., Don
Duff, Gen. Counsel, Dept. of Highways,
Frankfort, Hugh J. Convery, Madisonville,
M. T. Quinton, Jr., Dept of Highways,
Frankfort, for appellant.

Calvin Ray Robinson, Owensboro, for
appellees.

CLAY, Commissioner.

In this condemnation case the jury
awarded the landowners $40,000 for the
taking of an approximately five-acre strip
of land through a 75-acre farm. It is con-
tended a mistrial should have been declared
and the damages are palpably excessive.

With respect to the first point, it
appears that during argument in chambers
with regard to some other question, the
Commonwealth's counsel moved for a mis-
trial on the ground that two of the land-
owners' witnesses were observed talking
with members of the jury. After making
this motion, the Commonwealth's attorney
continued arguing another point. Some
time later in chambers the court was asked
what was his ruling on the objection to
witnesses conversing with the jury. The
court then asked—"Do you want to bring
them in—?" The Commonwealth's attorney
stated that the matter had just been
brought to his attention, whereupon the
court ruled "unless there is further show-
ing on that I am going to overrule that
motion". The record recites that later on

(still during this lengthy argument on another point):

"(At this point Mr. Robinson (the landowners' attorney) asked Mr. Quinton (attorney for the Commonwealth) again if he wished to have the Court bring the Jurors in and ask them about their association with the mentioned witnesses, and Mr. Quinton declined to have this done.)"

Under the cases of Raybourn v. Howard, Ky., 307 S.W.2d 206 (1957), and Commonwealth, Dept. of Highways v. Pittman, Ky., 425 S.W.2d 726 (1968), there may have been in this case misconduct of the jurors which would have justified a mistrial. However, when the court and the landowners' attorney both offered to have the jurors brought in for examination, the attorney for the Commonwealth did not press his point. By his actions he waived it.

We come to the question of excessiveness. The taking was of a strip containing approximately five acres, about 130 feet wide, through the middle of appellees' 75-acre farm for the construction of a non-controlled-access highway. The property theretofore had been used only for farming purposes. The award of $40,000 was the equivalent of $8,000 an acre. The jury had found the before value to be $100,000 and the after value $60,000.

In support of this very substantial award the landowners' witnesses took the view that the 75 acres had a potential before value for industrial purposes. They then said that after the taking, which divided the property into two separate tracts of 37 acres and 32 acres respectively, the land had a value for farming, and some commercial purposes. The first witness for the landowners was the county sheriff who had experience in buying and selling land, although not currently engaged in the real-estate business. He said, and it was not disputed, that there had been substantial industrial development in the general area.

The next witness had been engaged in "school work and farming and real estate". He said he had had experience in buying and selling farms and tracts of land. He held a real-estate broker's license. The last witness was in the auction and real-estate business and held a real-estate broker's license. The witnesses for the landowners were qualified and they were subjected to thorough cross-examination.

It was their opinion that splitting this farm substantially impaired its potential for industrial development. It also appeared that the two remaining tracts did not have any recognizable value for subdivision purposes. Their potential for commercial development was minimized by these witnesses.

■ Perhaps if we were sitting on a jury, we might be inclined to disbelieve that the two remaining tracts had completely lost the industrial value which the entire farm once had. However, this is a matter of the credibility of the testimony offered by the landowners' witnesses. If they were to be believed, the jury verdict had substantial support. This was a most generous award but the issue of just compensation was fairly submitted to the jury. We cannot say it was so palpably excessive that the verdict should be set aside.

The judgment is affirmed.

MILLIKEN, PALMORE, REED, STEINFELD, and OSBORNE, JJ., concur.

EDWARD P. HILL, Jr., C. J., and NEIKIRK, J., dissent.

EDWARD P. HILL, Jr., Chief Justice (dissenting).

At the risk of being labeled "the highest paid juror in this Commonwealth," against which I have been duly cautioned, I cannot

join my distinguished colleagues in blindly upholding the verdict of a jury that allows a landowner $8,000 an acre for his land. The highest valuation of the landowner's own witnesses as to other comparable sales in the community was $2,700 per acre. Furthermore, the landowner's contention that the division of his farm into two tracts of thirty odd acres each substantially impaired its potential for industrial development, is disproven by the comparables given by his own witnesses and by common knowledge of men everywhere.

I claim to have as great or greater faith in the jury system as any member of the court, but the jury, like all human action, is not infallible. It is the duty of the court to examine the evidence on which the jury reaches its verdict, and if that evidence does not have credibility and is based solely on conclusions, the ancient aura and respect for the jury's verdict should depart like the dew before the rising sun.

NEIKIRK, J., joins in this dissent.