**Charles D. DILLARD, Appellant,**

v.

**Catherine ACKERMAN and Prudential Property and Casualty Company, Appellees.**

Court of Appeals of Kentucky.

Feb. 17, 1984.

James David Bryant, Harlin, Parker & Rudloff, C. Randall Michel, Bowling Green, for appellant.

Michael V. Pearson, Robert D. Simmons, Bowling Green, for appellee.

Before MILLER, COOPER and DUNN, JJ.

DUNN, Judge.

The appellee, Catherine Ackerman, sued the appellant, Charles D. Dillard, as the result of an automobile accident which happened on April 22, 1980, on Antioch Road in Warren County. The appellee alleged personal injuries and property damages, and the appellant counterclaimed for damages to his truck.

The first trial of the case resulted in a jury verdict denying relief to each party. Judgment to this effect was entered on July 1, 1982. On the same date, the appellee Ackerman moved for judgment notwithstanding the verdict and alternatively for a new trial. On July 21, 1982, the court entered an order granting a new trial. A second trial resulted in a verdict in favor of the appellee Ackerman in the total amount of $30,022.25. This appeal is taken from the order of the Warren Circuit Court granting the new trial after the first trial was had, from the trial order and judgment of the second trial and from the order of the trial court overruling the appellant's motion for a new trial and alternatively for judgment notwithstanding the verdict following the second trial.

In the first trial, the trial court granted a new trial because the court's bailiff sat in the jury room while it accomplished its deliberations which resulted in relief being

denied to both parties. Actually, his location during the deliberations was not actually in the jury room itself, but in a foyer-like arrangement immediately next to the jury room with an open doorway between them. The combination of the two was shut off by a closed doorway so that, in effect, the bailiff was present in the room with the jury.

The appellant's first argument on appeal is that the trial court erred in granting the appellee's motion for a new trial on the basis that the bailiff was present in the jury room during deliberations since no prejudice was shown even though his presence constituted an appearance of evil.

Our law is well settled that a jury or jurors may not impeach the verdict of the jury unless the verdict was arrived at by lot or by some other method. Facts may be shown from other sources which may impeach the verdict, however. *Waitmann v. Marksberry*, 200 Ky. 1, 254 S.W. 432 (1923). The affidavit of a juror can be used to support a verdict. *Gregorich v. Jones*, Ky., 386 S.W.2d 955 (1965). *See also, George v. Standard*, Ky., 431 S.W.2d 711, 714 n. 4 (1968), quoting the effect of the holding in *Romans v. McGinnis*, 156 Ky. 205, 160 S.W. 928 (1913).

It is obvious that if the above rules are applied, it is impossible to prove prejudice resulting from the bailiff's presence in the room even though some prejudicial events might have taken place as indicated by the inadmissible impeaching affidavit of the juror submitted by the appellee in support of a motion for a new trial. Of course, under these rules, the trial court could have considered the affidavit of the foreman of the jury filed by appellant in support of the first verdict to the effect that no communication was had between the jury and the bailiff. This ignores the facts, however, that such information is limited to the knowledge of the foreman. It could have happened that a communication took place that he was unaware of. It also ignores the intimidation factor created by the bailiff's very presence in the jury room. Applying these principles to the case at

hand, therefore, would seem to lead us to conclude that the trial court did commit error since there was no showing of prejudice. We do not thus so conclude, however.

Kentucky has taken an opposite position as to irregular conduct affecting the jury as a whole in *Commonwealth, Dept. of Highways v. Pitman*, Ky., 425 S.W.2d 726, 728 (1968), wherein the court stated:

> Recent opinions handed down by this court take a firm line in situations involving irregular conduct which affects the jury as a whole, no showing of prejudicial influence being required.

One of the cases it cites is *Juett v. Calhoun*, Ky., 405 S.W.2d 946, 950 (1966), and the court quoted from it as follows:

> Once again we are confronted with the "appearance of evil" principle. Great care must be taken to assure the litigants—and the public generally—that jury trials are conducted fairly and free from opportunities for contamination. We do not suggest that anything improper was said or done by any lawyer or litigant—but the truth is—*if* there had been, it would be substantially impossible to prove.

We agree with not only this principle but its underlying philosophy. In a case such as we have here, where the misconduct, albeit not of a juror but that of a bailiff, was patently improper, in view of our rule that a jury cannot impeach its own verdict, we would be helpless to redress the wrong caused unless we had a doctrine to apply such as the "appearance of evil principle."

There is no Kentucky case squarely on all fours with the case under consideration. An Alabama case, *Barnett v. Patillo*, 33 Ala.App. 599, 36 So.2d 450 (1948), is in point, however. There the jury retired to deliberate in a room which was also used as the office of two Army-Navy recruiters. They stayed in the room with the jury during the entire deliberation. They did not speak with the jury. The court ruled that a new trial was in order and in so

doing it stated at page 451 of the opinion that:

> To prove a verdict rendered under the circumstances and conditions disclosed by this record would, in our review, evidence a serious abandonment of the sanctity of the jurys' deliberations and the secrecy of its consultations.

■ We agree and so hold. The trial court in our opinion committed no error in granting a new trial on the grounds that the bailiff was present in the jury room during the entire deliberations, even though there was no showing of prejudice thereby. The "appearance of evil" resulting from such a situation militates for a new trial.

■ The next two contentions advanced by the appellant have to do with the trial court denying his motion for judgment notwithstanding the verdict and, alternatively, for a new trial. He first contends that the evidence did not support a verdict for the plaintiff, and, second, he contends that the evidence did not support the amount of the damages awarded. We disagree with both contentions. Our review of the record and the testimony in evidence referred to by appellant in support of its argument reveals that there was sufficient evidence to support the liability verdict for the plaintiff and to support the amount of damages awarded.

His last contention is that in the second trial the trial court permitted a state trooper to testify giving his opinion that the appellee, in driving as she testified at 35–40 miles per hour under the circumstances described in the trial, was driving at a safe speed. The same trooper in the first trial had expressed an inability to give such an opinion.

He maintains that, first of all, in view of the fact that the trooper had stated that he was unable to give such an opinion at the first trial, his giving the opinion in the second trial was a "surprise" to appellant that he could not have guarded against or even anticipated. He couples this with the proposition that the trial court erred in permitting the trooper to state an opinion as to the reasonableness of the appellee's speed in the first place.

■ We need not consider the issue of the appellant being surprised by the testimony since our law is clear that a police officer cannot express his opinion on the reasonableness of speed of an automobile at the time of the accident because such testimony invades the province of the jury. *Claycomb v. Howard*, Ky., 493 S.W.2d 714 (1973). We concede that admission of the trooper's testimony in this regard was error; however, the question remains was it prejudicial.

■ Our review of the record indicates no evidence that speed was any factor in this accident. The officer's testimony and the testimony of the appellee offer no such evidence. The appellant testified that he did not see the vehicle driven by appellee much less assert that she was driving too fast or at an unreasonable rate of speed. The sole factual question developed in the evidence involving liability was who was on what side of the road. There was no proof to indicate that appellee's excessive speed was involved to the point where she could have, by going at a slower rate of speed, extricated herself from a position of peril caused by the appellant being on the wrong side of the road. We conclude, therefore, that what error there might have been by the admission of the trooper's testimony was not prejudicial.

The judgment of the Warren Circuit Court is AFFIRMED.

All concur.